ROBERT ERNEST WALTERS *v.* STATE
OF MARYLAND

[No. 220, September Term, 1969.]

*Decided January 28, 1970.*

584

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Perry A. London* for appellant.

*James F. Truitt, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Harriette Cohen* and *Gerald A. Kroop, Assistant State's Attorneys for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

Robert Ernest Walters (appellant) and Dennis Logan, separately indicted, were jointly tried at a court trial in the Criminal Court of Baltimore for violation of the narcotic laws. Appellant was convicted of possession and control of heroin,[1] and a general sentence of 2 years was imposed. He claims that evidence was admitted against him in error.

Officer Steven Miller of the Tactical Section, Baltimore

---

1. Motion for judgment of acquittal made at the close of evidence offered by the State was granted as to Logan.

City Police Department, testified that while in uniform driving a marked police cruiser in the company of Officer Nolan he received information over the police radio about 11:20 P. M. on 26 June 1968, as a result of which he drove to North and Linden Avenues. He saw three men, two of whom he identified as appellant and Logan, leaning against a red car. He was about 25 feet from the men and the lighting conditions were "pretty good." The men walked to a doorway of a store. The officer saw appellant hand Logan something—"it was white, whatever it was"—and Logan "placed it in the back of his belt. * * * At this time based on the call that we had, we wanted to question them about it. * * * [T]hey came out of the doorway and started walking toward us. At this time Mr. Logan was trying to walk north across North Avenue and the other two gentlemen went west. I stopped Mr. Logan and Officer Nolan went up the street after the other two. * * * And at this time when I stopped Mr. Logan and asked him about the car, well, a pill fell out on the ground.[2] * * * [I]t was a gelatine capsule with white powder in it." At the time Logan was not under arrest—"I wanted to ask him about the car * * * based on the reason why we came down there. * * * He was fidgety and he kept his right hand near his back pocket." Having experience with narcotics before the officer thought "it might have been it. * * * [T]he capsule started to roll and I stuck my foot down to stop it, but I smashed it. * * * I said what did he have in the back of his belt. So at this time he reached around and handed me a handkerchief. And I took it and opened it up and it was a whole bunch of capsules in it." The officer then arrested Logan and searched him but no other contraband or weapons were found. And specifically there was nothing else in the back of his belt. Logan told the officer that the handkerchief and capsules did not belong to him. Objection was sustained to further

2. On further examination the officer said he did not actually see the pill fall to the ground. He first saw it rolling from the area of Logan's heel.

inquiry with respect to what Logan said about the capsules. It was established that there were 19 capsules, that the white powder contained therein was analyzed and that it proved to be heroin. Timely objection was made to the admission of the capsules.

Logan testified on the question of the search and seizure. He said when he saw the officers and started to walk away from them, Miller told him to halt, stepped in front of him and asked what he had—"I was, you know, kind of fidgety at the time." Logan said he did not have anything and the officer patted him down. On cross-examination he said appellant had put something in his pants pocket, back of his belt. "I knew what it was because I have seen him pass things around before and I had a hunch what it was." He said he lied to the officer because "[s]omebody put some stuff on you and you know you can't get away with it, you try to do something." He knew he had the capsules in back of his pants but did not want the officer to know it. He said he did not see a capsule roll on the ground or the officer put his foot on it. He denied he had been leaning against a car —"it was raining too hard, that's why." He admitted being in the doorway of a five and ten cent store which was closed. In answer to inquiry by the court he said he suspected what was in the handkerchief appellant stuck in his pants. Asked if he tried to get rid of it, he said, "It was caught up between the back of my pants and the outline of my underclothes. * * * I had my hand back there. I couldn't get it out the back of my pants."

The third man observed by the officer, Gregory Way, was produced by Logan. Way said that when the police approached he saw appellant put something in the back of Logan's pants.

Appellant offered no evidence on the issue nor did he argue it even though asked by the court if he desired to be heard. The court overruled the objection to the admission of the capsules as to appellant, saying "I can't see where [Walters] has any standing to contest the search * * *." However, the court sustained the objection to

the admission of the evidence as to Logan and the propriety of the court's action as to appellant must be considered within the frame of reference of its findings with regard to Logan. The court first found that there was no evidence sufficient to establish that the information received by the police over the radio constituted probable cause for the arrest of Logan. The State made no effort to develop what information was received and on the state of the record it is obvious that the arrest could not be supported on the basis of the information received by the arresting officer by the police broadcast.[3] The court then found that Logan was in restraint when the officer stood in front of him "and that even though the pill fell out after that that technically the search would have been illegal because the initial happening between the two of them was not such as to support a subsequent search." The State then argued that when the officer saw the pill which apparently had fallen from the possession of Logan, there was probable cause for the arrest and the subsequent search was reasonable as incident to a lawful arrest then made. For support of the State's argument see *Kalandras v. State*, 6 Md. App. 480; *Reagan v. State*, 4 Md. App. 590. The court then said:

> "Well, I am going to have to go one step further, which I really didn't intend to go, but I have to believe that the pill fell from the pocket or fell from the belt and the officer testified that this was in the condition it is now and that is inside—they were all inside of a plastic container and then inside a handkerchief and I suppose it is possible, but I find it difficult to believe beyond a reasonable doubt that the pill fell out. So, since it is necessary to make that ruling, I will include that in my findings * * *."

---

3. On examination of Way by Logan's counsel it was elicited that the police, upon accosting Logan, appellant and Way, said "something about some hubcaps being stolen off a car." The court considered this and rightfully found that it did not supply the deficiency in the evidence.

We can only construe these remarks of the court to mean that in order to find a subsequent legal arrest it would have to believe that the pill fell from Logan's possession. This factual posture, therefore, led inevitably to the conclusion that there was no probable cause for the arrest of Logan and that the seizure of the capsules from his person was unreasonable, not being supported by a lawful arrest.[4] We have no fact finding function, the weight of the evidence and the credibility of the witnesses being matters for the trier of fact.[5] Thus if we are to determine that the challenged evidence was properly admitted against appellant, we cannot do so on the ground that its seizure from Logan was reasonable as incident to Logan's lawful arrest, for on the facts found by the trial court, it is clear that the arrest was unlawful. The lower court ruled the capsules to be admissible against appellant despite the illegality of their seizure because appellant had no standing to object. Appellant now urges that he did have standing to object, relying on *McDonald v. United States*, 335 U. S. 451, *Jones v. United States*, 362 U. S. 257 and *Kleinbart v. State*, 2 Md. App. 183.

The exclusion of evidence otherwise competent but gathered by police in violation of the Fourth Amendment is a means for making effective the protection of privacy. It is firmly established that the rights assured by the Fourth Amendment are personal rights that may be enforced by exclusion of evidence only at the instance of one whose protection was infringed by the search and seizure. *Simmons v. United States*, 390 U. S. 377, 389. The rule was stated in *Jones v. United States, supra,* at 261:

> "In order to qualify as a 'person aggrieved by

---

4. It is inherent in the court's ruling that it found the seizure not consensual, and the State expressly conceded below that the search was not by consent. The court accepted the concession.

5. This Court does not sit as in *nisi prius* to appraise contradictory factual questions. This does not mean, however, that we may not, where necessary to the determination of constitutional rights, make an independent examination of the facts, findings and record so that we can determine whether in the decision as to reasonableness of a search the constitutional criteria have been respected.

an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else. * * * Ordinarily, then, it is entirely proper to require of one who seeks to challenge the legality of a search as the basis for suppressing relevant evidence that he allege, and if the allegation be disputed that he establish, that he himself was the victim of an invasion of privacy."

This same principle was acknowledged in *Mancusi v. DeForte,* 392 U. S. 364 and *Simmons v. United States, supra.* In *Alderman v. United States,* 89 S. Ct. 961, decided 10 March 1969, the Court expressly adhered to those cases and "to the general rule that Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." At 966-967. The Court thought there was "a substantial difference for constitutional purposes between preventing the incrimination of a defendant through the very evidence illegally seized from him and suppressing evidence on the motion of a party who cannot claim this predicate for exclusion." At 967. At one time a defendant who wished to assert a Fourth Amendment objection was required to show that he was the owner or possessor of the seized property or that he had a possessory interest in the searched premises. This doctrine presented a special problem in cases in which possession of the seized evidence was itself an essential element of the offense charged. The defendant seeking to comply with such standing requirements was forced to allege facts, the proof of which would tend, if indeed not be sufficient, to convict him or, at the least, be placed in the criminally tendentious position of explaining his possession of the premises. Judge Learned Hand pointedly put the dilemma within which such a defendant was pinioned in *Connolly v. Medalie,* 58 F. 2d 629, 930 :

> "Men may wince at admitting that they were the owners, or in possession, of contraband property; may wish at once to secure the remedies of a possessor, and avoid the perils of the part; but equivocation will not serve. If they come as victims, they must take on that role, with enough detail to cast them without question. The petitioners at bar shrank from that predicament; but they were obliged to choose one horn of the dilemma."

*Jones* found the dilemma not inescapable. Its holdings provided two means of escape. The first, applicable to offenses in which possession both convicts and confers standing, precluded the prosecution from denying that the defendant had the requisite possessory interest to challenge the admission of the evidence. The second, not restricted to prosecutions turning on illegal possession, but of general effect,[6] amplified the legally requisite interest in the premises searched.

As to the first the Court said that to hold that a defendant's failure to acknowledge interest in the contraband or the premises prevented his attack upon the search, would be to permit the prosecuting authorities to have the advantage of contradicting positions as a basis for conviction. It pointed out that such defendant's conviction flows from his possession *at the time of the search;* yet the fruits of that search, upon which the conviction depends, are admitted into evidence on the ground that the defendant did not have possession of the contraband *at that time.* Thus the prosecution may subject the defendant to the penalties meted out to one in lawless possession while refusing him the remedies designed for one in that situation. It held that the possession on the basis of which the defendant was to be convicted suffices to give him standing to object to the search and seizure.[7] At 263-264.

---

6. See *Mancusi v. DeForte, supra,* note 5, at 368.
7. This holding was with respect to the requirements of Rule

As to the second the Court found that the necessary quantum of interest is not confined to ownership in or right to possession of the premises searched. It held that anyone legitimately on the premises where a search occurs may challenge its legality by appropriate procedures, when its fruits are proposed to be used against him. But it was careful to point out: "This would of course not avail those who, by virtue of their wrongful presence, cannot invoke the privacy of the premises searched." *Id.*, at 267. And we note that in *Mancusi* the Court said that it is clear "that capacity to claim the protection of the Amendment depends not upon a property right in the invaded place but upon whether the area was one in which there was a reasonable expectation of freedom from governmental intrusion." 392 U. S. at 368.

In the instant case the arrest of Logan was on the public street and the seizure of the contraband incident thereto was from his person. As no premises were involved, the second alternative of *Jones* is not applicable. For the same reason neither *McDonald v. United States, supra,* nor *Kleinbart v. State, supra,* is apposite. *McDonald* turned on the failure of the police to obtain a search warrant before entering premises unlawfully and searching for and seizing contraband.[8] In *Kleinbart* we applied the second alternative of *Jones* to an automobile, finding that as the defendant was an invitee-passenger of the automobile searched he had standing to object to the fruits of that search. 2 Md. App. at 208. We cannot conceive that appellant had a right of privacy in the person

---

41 (e) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. The provisions of Maryland Rule 729 are sufficiently comparable to the federal rule as to make the rationale of the holding in *Jones* applicable. And in any event, *Alderman v. United States, supra,* states that *Jones* makes clear that Rule 41 conforms to the general standard and is no broader than the constitutional rule. 89 S. Ct., note 6, at 966.

8. We note that *Jones* resolved a question left open in *McDonald* —whether a guest on the premises searched had a right of privacy in the premises. And in *Alderman,* after quoting the general rule as to capacity to object stated in *Jones,* the Court noted, 89 S. Ct., note 7 at 966: "*McDonald v. United States,* 335 U. S. 451, * * * is not authority to the contrary."

of Logan. We believe it clear that Logan was not the willing depository of the contraband nor was he in any sense in voluntary possession or control of it as the agent or otherwise of appellant. Appellant could no more invoke the privacy of Logan's person in the circumstances than he could invoke the privacy of premises in which he was wrongfully present.

The question is whether the first alternative of *Jones* is applicable. That is, since possession of the seized evidence was itself an essential element of the offense charged, was the State precluded from denying that appellant had the requisite possessory interest to challenge the admission of the evidence. We do not think it was in the circumstances. Appellant was not faced with the Hobson's choice [9] which *Jones* sought to eliminate by relaxing the standing requirements. He was not in possession, actual or constructive, nor did he have control of the contraband at the time of the search. It could not be said that by thrusting the narcotics into the possession of Logan as he did, that he was placing them in an area in which there was a reasonable expectation of freedom from governmental intrusion *as to his privacy* within the meaning of *Katz v. United States,* 389 U. S. 347, 352. His convictions did not flow from his possession of the narcotics at the time of the search, within the ambit of *Jones,* but from his possession and control of them prior to the search of Logan and prior to any arrest. The lower court found as a fact that what the officer saw appellant hand Logan or place in the back of Logan's belt was the handkerchief containing the narcotics and we cannot say it was clearly wrong in this judgment on the evidence. In other words, appellant's position, by his own conduct, was that he could claim prejudice only through the use of evidence gathered as a consequence of a search and seizure directed at someone else. He was not the victim of a search and seizure; the search and seizure was not di-

---

9. "Where to elect there is but one,
'Tis Hobson's choice—take that or none." Thomas Ward, *England's Reformation*, ch. 4.

rected at him; he was not the victim of an invasion of his privacy. Thus he did not qualify as a "person aggrieved by an unlawful search and seizure." Appellant had no independent constitutional right of his own to exclude the relevant and probative evidence because it was seized from Logan in violation of the Fourth Amendment. As the Court said in *Alderman v. State, supra,* at 967:

"There is no necessity to exclude evidence against one defendant in order to protect the rights of another. No rights of the victim of an illegal search are at stake when the evidence is offered against some other party. The victim can and very probably will (as Logan here did) object for himself when, as and if it becomes important for him to do so. * * * [W]e are not convinced that the additional benefits of extending the exclusionary rule to other defendants would justify further encroachment upon the public interest in prosecuting those accused of crime or convicted on the basis of all the evidence which exposes the truth."

We agree that appellant had no standing to object to the search of Logan and the seizure of the challenged evidence. We hold that the court did not err in admitting the evidence.

*Judgments affirmed.*