### EDWARD LEROY RANDOLPH v. STATE OF MARYLAND

[No. 565, September Term, 1969.]

*Decided July 24, 1970.*

The cause was argued before MURPHY, C.J., and AN-DERSON, MORTON, ORTH, and THOMPSON, JJ.

*David A. Hyman (Louis Peregoff on the brief) for appellant.*

*James F. Truitt, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Luther C. West, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

On 20 January 1969 at 1:30 P.M. Policewoman Inez Haynie was working a purse snatch detail with Officers Mathew Boyd and Joseph Mitchell. At the corner of Eutaw Street and Brooks Lane in Baltimore City she saw four men, later identified as Edward Leroy Randolph, Frederick Allen Jones, Jerome Garland Stewart, Jr., and Theodore Kellam. "They came up Eutaw Street and turned west onto Brooks Lane. * * * They approached the corner going towards Madison Avenue and they were whispering, exchanging jackets, and I walked down as they were doing this. * * * I heard one of [them] say, 'Maybe we can get into that house today.' And during this time they were exchanging jackets." She told Boyd and Mitchell, who were in a marked police car, what she had seen and heard. The four men had gone up Madison Avenue. She and Mitchell followed them in the car and Boyd on foot. The men went south on Madison, crossed North Avenue and were heading towards Bloom Street

when two of them stopped and the other two "continued going on disappearing into a house on the corner of Presstman and Madison Avenue." Kellam was near a cleaning establishment and Jones was about 30 feet up the block on the east side of Madison Avenue. About 10 or 15 minutes later Stewart and Randolph "came back from this particular house at Presstman Street and Madison Avenue crossing to the east side of the street, which I was standing at Bloom and Madison." Randolph stopped to pull up his stocking and Stewart said, "You have pushed harder. You messed me up." "And at this he went into right pants pocket and pulled a gun and pointed it at Mr. Randolph." Boyd, in plainclothes, was about 10 feet away. He told Stewart that he was a police officer. "And as I reached for my badge case he says to me 'Who?' So I said, 'You. Drop the gun.' At this—at this I turned —half turned. By this time Mr. Randolph, he backed off away and Mr. Stewart kept coming around. At this, when I cleared and shot him in the knee, the right knee." At the time Stewart's gun was pointed at the officer. Stewart ran. Boyd pursued him and apprehended him in an alley in the rear of Gold Street and Madison Avenue. The gun, dropped by Stewart during his flight, was recovered. It was a .22 caliber, 6 shot Rowan revolver fully loaded. Mitchell arrested Randolph, Jones and Kellam on the scene. Jones and Kellam were walking toward a filling station and Randolph was "standing by the fence still looking." The police checked "the whole block" to ascertain whether a home had been "burglarized." They found nothing. One of the men told the police that he knew a girl that lived in the house they went in. Boyd said they checked and no one was at home in the dwelling.

The four arrestees were jointly charged with unlawfully conspiring "together and with each other and with certain persons" whose names were unknown to the Grand Jurors "to violate the Burglary Laws of the State of Maryland," jointly tried by the court in the Criminal Court of Baltimore and convicted.[1]

---

1. Stewart was also tried at the same time on charges of as-

We said in *Jones v. State*, 8 Md. App. 370, 375 that conspiracy is a combination by two or more persons to accomplish a criminal or unlawful act, or to do a lawful act by criminal or unlawful means. In Maryland it is a common law misdemeanor and the gist of it is unlawful combination, no further overt act being required to constitute the crime. Combination results from agreement, so there must be a meeting of the minds—a unity of design and purpose. The agreement may be shown by circumstantial evidence from which an inference of common design may be drawn; it is not necessary to demonstrate that the conspirators met and agreed in terms to a design and to pursue it by common means. *Boddie and Brooks v. State*, 6 Md. App. 523, 535. Appellant was charged with conspiring to accomplish a criminal act — to violate the "Burglary Laws." We pointed out in *Reagan v. State*, 4 Md. App. 590, 594-595, that in this jurisdiction there are three separate felonies under which the breaking of a dwelling house is proscribed—common law burglary, the penalty for which is prescribed by Code, Art. 27, § 29; statutory burglary, proscribed by § 30 (a), enacted to make the nighttime breaking and entering of a dwelling with intent to commit the misdemeanor of petit larceny a crime as well as when the breaking and entering is with the intent to commit the felony of grand larceny; and daytime housebreaking as proscribed by § 30 (b). It is clear that in the factual posture of this case if appellant conspired to violate a "burglary" law of this State it could only be that proscribed by Art. 27, § 30 (b). That section provides that it is a felony to break a dwelling house in the daytime with intent:

(1) to commit murder; or
(2) to commit felony; or
(3) to steal, take, or carry away the personal goods of another of any value therefrom.

And if he conspired to break a dwelling house it could only be that on the corner of Presstman Street and Madi-

---

sault with intent to murder and "deadly weapon." He was acquitted of the first and convicted of the second.

son Avenue into which Boyd saw appellant and Stewart "disappear" and from which Mitchell saw them "come out."

We hold that the evidence in law was not sufficient to sustain the conviction. This is so because the direct evidence before the trier of fact and the rational inferences therefrom did not establish that appellant and his companions conspired together or with each other and certainly not with persons unknown to break the dwelling with the required intent. What the policewoman overheard was not that they were going to break the dwelling but "maybe we can get into that house today." Appellant and Stewart apparently went into the house [2] but did so without a breaking since there was no evidence of tampering. Nor do we think that the enigmatical remark of Stewart, "You have pushed harder. You messed me up," provided evidence by rational inference that they had agreed to break the dwelling. The lower court stated that the fact that no one was home in the dwelling "frankly put meaning into the words of Mr. Stewart said to Mr. Randolph" [3] but it did not explain what meaning. The court observed, "But the totality of the situation is frankly not consistent with innocence in that regard and shows that a plan indeed was entered into and in fact attempted, intended to be carried out." But it did not find as a fact what plan was attempted and we cannot say that the evidence was sufficient for the court to find beyond a reasonable doubt that the men conspired to break the dwelling with intent to murder, commit a felony or steal personal property. That "the totality of the situation" was "not consistent with innocence" did not establish guilt beyond a reasonable doubt even though the court did not believe the testimony of Jones and Kellam that they wanted to get in the house to visit a girl friend.

---

2. Whether it was a single family dwelling or contained apartments with access from a common hallway or lobby was not disclosed.

3. The court remembered the words as "You *should* have pushed harder." "Should" does not appear in the quotation by Boyd of what he overheard.

94

We hold that the court was clearly erroneous in its judgment on the evidence.

At oral argument appellant abandoned the first question presented in his brief and we need not reach the others in view of our holding.

We cannot determine from the record whether or not additional probative evidence can be produced on a retrial. We think that the interests of justice appear to require that the judgment be vacated. We remand the case with directions to the trial court (a) to hold a new trial if the State within a time to be specified forthwith by the trial court can satisfy the court that it can produce additional probative evidence (such time to be as it finds in the exercise of judicial discretion to be reasonable in the circumstances), or (b) to enter a judgment of acquittal if the State cannot preliminarily so satisfy the court. *Gray v. State,* 254 Md. 385, 397.

> *Judgment vacated; case remanded for further proceedings in accordance with this opinion.*