## MOSES MILLS *v.* STATE OF MARYLAND

[No. 545, September Term, 1970.]

*Decided June 30, 1971.*

450

The cause was argued before MURPHY, C. J., and AN-DERSON and MORTON, JJ.

*Morris Lee Kaplan,* with whom was *Michael Lee Kaplan* on the brief, for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Howard L. Cardin, State's Attorney for Baltimore City,* and *Robert C. Stewart* and *Peter D. Ward, Assistant State's Attorneys for Baltimore City,* on the brief, for appellee.

Murphy, C. J., delivered the opinion of the Court.

Appellant Moses Mills was convicted by a jury in the Criminal Court of Baltimore, Judge Charles D. Harris presiding, of (a) conspiracy to violate the narcotics laws, (b) conspiracy to keep and maintain a nuisance house at 2010 Brunt Street, Baltimore, Maryland in violation of the narcotics laws; and (c) conspiracy to violate the narcotics laws with reference to barbiturates.[1] He was sentenced to two consecutive five-year terms and fined $1,000 on each of the first two charges and, as to the third charge, was fined $2,000 and given a five-year sentence concurrent with the other sentences.

On appeal, he raises fourteen contentions and a miscellany of minor subcontentions. They are best understood in light of a general statement of facts augmented by a recital of specific facts where relevant.

William Mack Holt, Connie Pope, and George Bell testified that they had been employed by appellant and were, prior to their arrests early in 1969, engaged with him in the operation of his Robittusin (codeine-based) "cough syrup house."

George Bell had worked one day in the cough syrup house prior to his arrest but testified to having been one of appellant's customers since 1966. He described the continual relocation of appellant's cough syrup house over a three-year period from Shields Street, to Eddying Street, to Brunt Street,[2] to Roberts Street, and finally to 2010 Brunt Street. He stated that he had seen appellant at the other locations several times; that at one of the other locations, he saw the appellant come by in the morning about 10:00 to collect the money from the previous night's cough syrup sales; and that he had been employed by appellant to sell cough syrup and dummies (barbiturates).

---

1. The indictments charged that the conspiracy to keep and maintain the nuisance house covered the period from January 1, 1969 to August 1, 1969, and that the other two conspiracies covered the period from August 1, 1968 to August 1, 1969.

2. Due to an expansion of this operation, two houses were opened up on Brunt Street, one of which moved to Roberts Street.

In addition to corroborating Bell's testimony, Connie Pope testified that she had known appellant since 1967 when she first bought cough syrup from him; that thereafter she worked for appellant selling cough syrup and dummies; that she accompanied appellant and "Red" (William Mack Holt) down to a Washington D.C. pharmacy and from there would sometimes return to Baltimore with twenty cases of cough syrup; that appellant was head of the operation; and that he was present at 2010 Brunt Street almost every day except Sundays. She identified syrup which the police had seized at the 2010 Brunt Street syrup house.

William Mack Holt had known appellant for over fifteen years. When he was released from jail in 1966, appellant had asked him to work for him selling cough syrup. In addition to generally confirming the testimony of Bell and Pope, Holt testified that appellant sold cough syrup and dummies at various locations in the City; that one of these locations was left in his (Holt's) day-to-day control; that appellant gave all the orders, paid the expenses, collected the daily receipts, and paid for and assisted in the transportation of syrup from Washington to the Brunt Street syrup house. Holt testified that appellant paid him $100 a week; that appellant stored his barbiturates in a garage; that following his arrest on May 12, 1969, appellant paid for his release on bail, and instructed him to return to work but to operate away from the Brunt Street house.

Testimony by police officers was adduced to describe (a) three searches of 2010 Brunt Street pursuant to warrants, the seizures of cough syrup and barbiturates as a result, and the arrests of a number of individuals present at the time of the searches, including Bell, Pope, Holt, and Marguerite Wells; (b) a conversation overheard between appellant and Mrs. Wells at her preliminary hearing, and (c) events subsequent to the shooting of appellant on February 28, 1969 outside 2010 Brunt Street.

The three warrant-authorized searches of 2010 Brunt

Street were conducted February 22, April 3, and May 12, 1969; they resulted in the seizure of various items including codeine-based Robittusin cough syrup, morphine, heroin, secobarbital, codeine powder, a "money box," a tally sheet or price list, and narcotics paraphernalia.

Officer Anthony Smith testified that he was present when Marguerite Wells was arrested incident to the search of February 22; that he was also present at a preliminary hearing held shortly thereafter, at which time he overheard appellant say to Mrs. Wells, "I told you not to bring the hard stuff."

Officer John Williams testified that on February 28 he went to 2010 Brunt Street in response to a call, found the appellant lying in the street twenty feet away from the house and heard him shout that he had been shot. Officer Williams testified that appellant denied knowing who shot him but admitted that he had been visiting Connie Pope and a Miss Campbell at 2010 Brunt Street just prior to when he was shot.

I

Of the three searches made at 2010 Brunt Street, the return on one was not made until one month after the search; the return on another was not made until fourteen days after the search; and the return made on the third was not filled in as to the day, and the searching officer could not recall the exact date that it was made. On the basis of these facts adduced at a pretrial hearing the return of the search warrants was deemed to be defective by the hearing judge on the ground that Maryland Rule 707 c requires a return within five days. As a consequence, the court concluded that the evidence seized under the warrants could not be introduced against Holt who was found on the premises during one of the searches. Left open was the question whether the appellant had standing to object to the introduction of such evidence. At the trial, it was ultimately concluded that appellant lacked standing to object and, therefore, could

not properly move to suppress the evidence alleged to have been illegally seized from the Brunt Street house and from the persons there arrested.

Appellant contends that (1) he has standing to object because there was evidence showing that the cough syrup house at 2010 Brunt Street was set up by him and that he daily regulated and profited from its operations, and (2) the seized evidence was inadmissible since the search warrants were not timely returned.

We think appellant had standing to challenge the searches. In *Walters v. State,* 8 Md. App. 583, we noted that the stake one need possess in searched premises to object to evidence seized therefrom had been discussed in *Jones v. United States,* 362 U. S. 257, and that *Jones* generally held that aside from the owner or one who has a right of possession in the premises, anyone legitimately on the premises searched has standing to object. The "legitimately present non-owner" doctrine has generated much discussion. *See Middleton v. State,* 10 Md. App. 18; *Anderson v. State,* 9 Md. App. 532; *Kleinbart v. State,* 2 Md. App. 183. *Jones* cannot fairly be read to constrict the standing of one having a strong possessory and/or controlling interest in searched premises, but who was not present while the search was being conducted. *See Mancusi v. Deforte,* 392 U. S. 364, and *United States v. Jeffers,* 342 U. S. 48. The evidence indicated that appellant exercised control over the searched premises, giving rise to an inference that no activities would occur there without his permission or over his objection. Therefore, as in *Mancusi,* appellant had a reasonable expectation of privacy with respect to the activities and items within the searched premises. This expectation of privacy is afforded Fourth Amendment protection notwithstanding appellant's inability to show title (*United States v. Jeffers, supra*) or because of the commercial form of the activity conducted on the premises (*Wilson v. United States,* 221 U. S. 361). *See also Katz v. United States,* 389 U. S. 347.

We hold, however, that appellant's standing to object

to the introduction of the seized evidence is of no consequence in this case, since we believe that the untimely return of a search warrant under Rule 707 c is no basis for excluding evidence seized under otherwise validly issued and executed warrants.

In *Fitez v. State,* 9 Md. App. 137, we held that the purpose and policies behind Maryland Rule 707 a and b (inventory and service of copy) were properly served by viewing those provisions as ministerial, and that a technical violation of those Rules would not preclude admission of evidence seized under otherwise lawfully obtained search warrants.

Maryland Rule 707 c provides:

> "The search warrant shall be returned to the issuing judge, or in his absence to another judge of the same circuit in which the search warrant was issued, as promptly as possible and in any event within five days from the date the search warrant was executed or within such earlier time as may be set forth in the search warrant for its return. The return shall be accompanied by a copy of the inventory made pursuant to section a of this Rule."

The marked similarity in form and substance between Maryland Rule 707 c and provisions in other jurisdictions requiring the timely return of a search warrant is readily evident from the most cursory research. The decisions in those other jurisdictions almost uniformly hold that the return of a warrant is a ministerial act and that failure to comply with the return requirement does not render the search warrant defective or the seizure invalid. *See United States v. Haskins,* 345 F. 2d 111 (6th Cir.) ; *Evans v. United States,* 242 F. 2d 534 (6th Cir.) ; *United States v. Averell,* 296 F. Supp. 1004 (E.D. N.Y.) ; *United States v. Romano,* 203 F. Supp. 27 (D.C. Conn.) ; *United States v. Gross,* 137 F. Supp. 244 (S.D. N.Y.) ; *United States v. Baldwin,* 46 F.R.D. 63 (S.D. N.Y.) ; *People v. Hawthorne,* 258 N.E.2d 319 (Ill.) ; *State v.*

*Hunt,* 454 S.W.2d 555 (Mo.) ; *People v. Schmidt,* 473 P. 2d 698 (Col.).

Procedural requirements in connection with search warrants are ordinarily intended to safeguard the constitutional right of the individual against unreasonable searches and seizures by protecting some important but subsidiary purposes, *viz.,* for example, the protection of owners' rights and proof of chain of custody. *See Fitez v. State, supra.* In this case no question is raised as to the reasonableness of the searches or seizures; they were conducted pursuant to validly issued warrants and thus were based upon probable cause. Entry into 2010 Brunt Street and seizure of the evidence was, when made, entirely lawful under the warrants. The officers' failure to timely file their returns does not, we hold, retrospectively nullify or vitiate the warrants or the actions taken under their authority. To exclude evidence validly seized for non-compliance with the ministerial direction of Rule 707 c is too great a price to pay for mere police inadvertence. For these reasons, we find no error in the admission of the seized evidence.

## II

Appellant contends that possession of codeine-based cough syrup is not a crime, and that in any event the burden is upon the State to prove that his possession of such syrup fell outside each and every statutory exception making such possession lawful. We find no merit in the contention for the reasons set forth in *Berlin v. State,* 12 Md. App. 48, and *Reid v. State,* 10 Md. App. 6.

## III

As a licensed and registered pharmacist for approximately twenty years, with at least ten years of experience with codeine-based cough syrup, Dr. Irvine Pruce testified as to his procedure in handling Robittusin A.C. cough syrup, as to the existence and nature of State and federal regulations with respect thereto, as to the normal quantity distributed by prescription, as to the proper means of branding said cough syrup, as to its price, as

to its effect upon a normal adult, and as to its addictive propensity.

Contrary to appellant's contentions, Dr. Pruce's background indicated that he possessed relevant expert knowledge of a technical nature, and we think his testimony upon those matters was properly admitted. *See Crews v. Director,* 245 Md. 174; *Ager v. Baltimore Transit Co.,* 213 Md. 414; *Long v. Director,* 8 Md. App. 627; *Nelson v. State,* 5 Md. App. 109; *Harding v. State,* 5 Md. App. 230.

## IV

Appellant claims that the court erred when it denied his several requests for a mistrial. In reviewing this contention, we note that the granting or refusal to grant a mistrial is within the sound discretion of the trial judge whose decision will not be reversed on appeal except for clear abuse of discretion. *Brunson v. State,* 9 Md. App. 1.

(a) A Juror's Discovery That She Knew One of the Witnesses.

Although all jurors were asked whether they knew any of the witnesses, this procedure did not uncover a juror who knew one of the witnesses by face but not by name and address.[3] After the juror realized she knew the prospective witness, and her knowledge became apparent, the trial judge examined her in chambers and decided that her acquaintance with the witness would not influence her ability to render a fair and impartial verdict.

The relation of a juror to a witness may present an opportunity for prejudice. *Bristow v. State,* 242 Md. 283. However, mere relationship or mere acquaintance is not a sufficient basis for challenging a juror for cause. *Baker v. State,* 3 Md. App. 251, *Borman v. State,* 1 Md. App. 276. We think the juror's acquaintanceship with the witness, who did not testify, did not furnish a basis for a mistrial, particularly so because of the trial judge's ex-

---

3. The witness was a codefendant whom the State did not intend calling and who did not testify.

amination and finding that the juror could render a fair and impartial verdict.

(b) Improper Argument.

The State's Attorney, in argument before the jury, stated "William Mack Holt said on February 22, 1969, that if you buy your cough syrup, you bought it from Moses Mills, he was running the whole thing." The trial judge, who apparently did not hear the remark, stated that it should be clarified that the Assistant State's Attorney was "quoting what some witness said other than the defendant." Viewed in context and in the light of the trial court's rejoinder, it does not appear that this comment either inflamed the passions or misled the reasoning of the jurors. *See Chandler v. State*, 7 Md. App. 646; *Holbrook v. State*, 6 Md. App. 265.

(c) The Trial Judge's Ruling Allowing Mrs. Pope to Refrain From Giving Her Address.

Mindful of *Smith v. Illinois*, 390 U. S. 129, we find no error in allowing to go unanswered the question as to her address since, in this case, the appellant's long acquaintance with the witness dispensed with the need for exploratory inquiry and by means of cross-examination he was able to place the witness's testimony in its proper setting. *Compare Alford v. United States*, 282 U. S. 687.

V

Appellant contends that the State should not have been permitted to have a chemical analysis prepared upon several bottles of cough syrup after those bottles had been offered as State's exhibits for identification. We see no error requiring reversal, no prejudice being shown. Appellant claims that (1) the grand jury's indictment without this evidence was improper, and (2) the statute of limitations had already run on the offenses with which he was charged. The competency and legal sufficiency of the evidence before the grand jury and upon which an indictment was based, is not ordinarily subject to appellate review. *Presley v. State*, 6 Md. App. 419; *Grimm*

*v. State,* 6 Md. App. 321; *Butina v. State,* 4 Md. App. 312.

Appellant's contention that allowing the State to analyze evidence after the statute of limitations period violates the statute, fails to consider that Article 57, Section 11 of the Annotated Code requires only that prosecution be commenced within one year from the time the offense was committed. This time with respect to the offense of conspiracy is measured from the date of the end of the conspiracy. *Scarlett v. State,* 201 Md. 310; *Archer v. State,* 145 Md. 128. In the indictments as initially prepared, the conspiracy was alleged as occurring up to the date of August 1, 1969; the indictments were handed down on October 7, 1969 and December 10, 1969.

This span of time between the alleged end of the conspiracy and the commencement of the prosecution is the crucial time. Therefore, appellant's additional argument that his statute of limitations defense was prejudiced by allowing the State to amend the indictments as to the date of the *beginning* of the conspiracy is utterly without merit. Normally, an amendment as to the date of an offense is a matter of form and not substance. *Tucker v. State,* 5 Md. App. 32. Merely raising a statute of limitations argument is insufficient to make the date a matter of substance. See Annotation, 14 A.L.R.3d 1297, 1324.

## VI

On cross-examination, appellant indirectly impugned Officer Smith's narcotics expertise. He claims that the court erred when it permitted the prosecutor, on redirect examination, to further establish the officer's qualifications.

The trial judge's discretion in permitting inquiry on redirect is wide, particularly where the inquiry is directed toward developing facts made relevant during cross-examination or explaining away discrediting facts. VI *Wigmore on Evidence,* Section 1896. We find no abuse of that discretion in this case. *See also Spillers v. State,* 10 Md. App. 643; *Jones v. State,* 2 Md. App. 356; *Ting-*

*ler and Wright v. State,* 1 Md. App. 389 (trial judge's discretion to allow reopening of case).

## VII

Appellant objected to the testimony of Connie Pope that "Bo-Peep" (a visitor to the Brunt Street house) had put a gun in the dirty linen and "almost half a bag of dummies." "Dummies" had been early described to the jury as barbiturates. Appellant's contention that only a chemical analysis of these items, which were not recovered, is a proper basis for the opinion that they were narcotics is without merit. Mrs. Pope was shown to be an addict who engaged in the sale and use of "dummies." That she possessed sufficient background to make the statement is, we think, clear. *See Mullaney v. State,* 5 Md. App. 248; *Sherrod v. State,* 1 Md. App. 433. The absence of scientific verification, in this case, would go only to the weight and not the admissibility of the evidence.

## VIII

The State's witnesses Holt and Bell testified to meeting appellant in 1966 and being asked to work with him in his "cough syrup house." Appellant's objection notwithstanding, this evidence of a prior scheme similar to the present operation was relevant and admissible in establishing the existence of continuing conspiracies manifested by appellant's present operations at 2010 Brunt Street and elsewhere in Baltimore City. *See generally Wilson, Valentine and Nutter v. State,* 8 Md. App. 653; *Wethington v. State,* 3 Md. App. 237.

## IX

Witnesses Holt, Bell, and Pope testified, as heretofore indicated, that appellant ran the "cough syrup house on 2010 Brunt Street." Appellant contends that each of the witnesses was an accomplice whose testimony, unless corroborated, was insufficient to sustain his convictions.

As the State admits, the only permissible inference from the record is that the three employees were accomplices of their employer as to crimes within the scope of

their employment. *See Sutton v. State,* 10 Md. App. 353. Therefore, corroboration is needed but only slight corroboration is necessary to sustain a conviction. *Christopher and Klimp v. State,* 9 Md. App. 277; *Wise v. State,* 8 Md. App. 61. That corroboration must tend to support a material fact which identifies the accused with the perpetrators of the crime or shows that the accused participated in the crime itself. *Spies v. State,* 8 Md. App. 160; *Boone v. State,* 3 Md. App. 11.

The evidence linking the appellant with the house at 2010 Brunt Street and the occupants therein is adequate to meet the corroboration requirement. Officer Smith testified that at a preliminary hearing appellant told a person arrested in February of 1969 within 2010 Brunt Street that she should not have "brought hard stuff." Officer Williams testified to conversation with appellant after he was shot outside 2010 Brunt Street wherein he said that just prior to the time of the shooting he was visiting friends at 2010 Brunt Street. We think this evidence independently demonstrates appellant's connection to the premises in question and to its occupants Bell, Holt, and Pope, and is sufficient corroboration. We hold that this corroborated testimony of the accomplices provided a sufficient evidentiary predicate to justify the trial judge denying appellant's motions for judgment of acquittal and permitting the case to go to the jury. The indictments charged that appellant conspired with Holt and others and the record indicates that there was evidence sufficient to establish all requisite elements of the conspiracies.[4] *Randolph v. State,* 10 Md. App. 89; *Regle v. State,* 9 Md. App. 346; *Jones v. State,* 8 Md. App. 370.

## X

That the trial judge is permitted a wide discretion as to the form of instructions is clear. *See Nora Cloney &*

---

4. Appellant makes no contention with respect to the merger of any of the conspiracies and we do not consider the question.

*Co. v. Pistorio,* 251 Md. 511; *Lemons v. Chicken Processors,* 223 Md. 362. Although instructions should be accurate, complete, definite, certain, non-repetitious, consistent, and without undue prominence to any particular matter, the trial court's discretion as to wording, order, and amount of detail in an instruction will not be disturbed on appeal absent a clear abuse of that discretion. Applying these considerations to the instructions given, we find no merit in appellant's various objections to the court's instructions.

(a) The Instruction as to Reasonable Doubt.

In its instruction to the jury, the trial court stated:

> "You have been told by counsel that the defendant is innocent until proven guilty beyond a reasonable doubt. I advise you that that is not a correct or precise statement of the law. The defendant in this case, as in any criminal case in Maryland, is presumed to be innocent until proven guilty beyond a reasonable doubt. He is not clothed in innocence, but he is clothed in the presumption of innocence."

The objection to the trial court's use of the term "presumed to be innocent" instead of appellant's suggested phrase "is innocent" is without merit. Similar instructions have been deemed proper. *See Thompson v. State,* 4 Md. App. 31.

(b) Failure to Instruct the Jury as to a Statutory Exemption of the Narcotic Laws.

Since the burden of proving that an accused falls within a statutory exception is upon the accused (Article 27, Section 298 (1967 Repl. Vol.)), the trial court did not err in refusing to instruct the jury that no evidence was adduced by the State showing that appellant was outside the pale of the statutory exception in question. *See Reid v. State, supra.* The requested instruction would

have misled the jury as to the proper burden of proof and hence would have been impermissible. *See Wintrobe v. Hart,* 178 Md. 289; *Provident Trust Co. v. Massey,* 146 Md. 34; *B & O R.R. Co. v. Boyd,* 67 Md. 32.

(c) The Law of Conspiracy.

Appellant contends that the court's instructions to the jury "gave only the State's side * * * without giving the defense an opportunity to argue otherwise." It is elementary that each party is entitled to have his legal theory of the case submitted to the jury if there is any competent evidence to support it. In the absence of a showing of a specific denial of an instruction supported by the evidence, appellant's contention is lacking in merit. *Compare Gaskins v. State,* 7 Md. App. 99; *Halcomb v. State,* 6 Md. App. 32. Nothing in the record even remotely suggests that the court refused to permit appellant to argue to the jury contrary to its instructions. *See Lewis v. State,* 2 Md. App. 678.

## XI

Appellant received a five-year concurrent sentence on the conspiracy to violate the narcotic laws with reference to barbiturates. At the disposition hearing it was made clear that appellant was charged with conspiracy to violate Article 27, Section 313C (1967 Repl. Vol.) which carried a maximum sentence for the first offense of one year imprisonment and a $250 fine. The five-year sentence for conspiracy to violate Section 313C appears to be in conflict with Code, Article 27, Section 38, which provides:

> "The punishment of every person convicted of the crime of conspiracy shall not exceed the maximum punishment provided for the offense he or she conspired to commit."

Section 38 would prohibit a five-year sentence under these circumstances and we must therefore vacate that

sentence and remand for resentencing under this indictment.

> *Judgments as to indictments 6956 and 6957 affirmed; judgment as to indictment 8858 affirmed, except as to the sentence; case remanded for imposition of a new sentence in accordance with this opinion; costs to be paid by appellant.*