DOMINIC A. QUAGLIONE *v.* STATE OF MARYLAND

[No. 565, September Term, 1971.]

*Decided June 30, 1972.*

572

The cause was argued before MURPHY, C. J., and MORTON and CARTER, JJ.

*Howard L. Cardin* for appellant.

*George A. Eichhorn, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *J. Thomas Caskey, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

CARTER, J., delivered the opinion of the Court.

The appellant, Dominic Anthony Quaglione, was convicted by a jury in the Criminal Court of Baltimore of unlawfully conspiring with William D. Jones "to violate the Narcotic Laws of the State of Maryland" and sentenced to five years in prison. He appeals from this judgment contending that the trial court committed prejudicial error in (1) admitting evidence against him that was procured by an unlawful search and seizure, (2)

failing to restrict the sentence within the maximum of one year for conspiracy to possess marijuana under provisions of Chapter 273 (b) of the Acts of 1970 and Md. Code, Art. 27, § 38, (3) failing to grant the appellant's motion for a mistrial on account of the prosecutor's statement to the jury in his closing argument that a witness was in Canada, and (4) failing to grant appellant's motion to set aside the verdict because of its inconsistency with another verdict returned by the jury.

## FACTS

The evidence of the State as developed by police testimony showed that Officer Foertschbeck was in charge of an undercover police investigation into the unlawful sale of marijuana and LSD in the Southeastern Police District of Baltimore City during January and February 1970. During this period a reliable informer introduced him to William D. Jones (hereafter referred to as Danny) as a person from whom he could purchase narcotic drugs. On January 26, 1970, Officer Foertschbeck met Danny on Eastern Avenue and ordered two glassine bags of powdered hashish (a form of marijuana). Officer Gray who was a part of the investigative team observed Danny and Officer Foertschbeck conversing at this time, saw Danny depart from the scene, and followed him to Irvins Department Store. There he observed Danny go into the basement and meet with the appellant. Both the appellant and Danny then walked into a storeroom located off from the shoe sales area where he lost sight of them. In a short time Danny came up the stairs and proceeded to Eastern Avenue where he met Officer Foertschbeck. Officer Foertschbeck testified that when Danny returned a few minutes after their original transaction, he delivered to him the two glassine bags of powdered hashish [1] for which the officer had previously paid Danny $20. Officer Foertschbeck further testified that he

---

1. The contents were later chemically tested to be powdered hashish.

later obtained warrants for the arrest of the appellant and Danny which were duly served on February 13, 1970.

Danny testified for the State. His testimony showed that he had known the appellant since January 1970 when he met him in the shoe department of Irvins Department Store. At that time there were other persons present including Brenda Osborne and Harold Zeller (hereafter referred to as Canary). All of them agreed to try to raise bail money to get Brenda's husband out of jail by selling narcotics (hashish and LSD) which they were to obtain from the appellant at the store. He further stated that pursuant to the agreement the appellant kept the drugs in a shoe box inside the storage room adjoining the shoe department. Under this arrangement Danny retained a commission of 50 per cent of the purchase price of the drugs sold and the remaining 50 per cent was paid to the appellant. Danny's commissions were turned over to Brenda to help finance her husband's bail fees. Pursuant to this plan Danny had procured hashish from the appellant on several occasions and in two instances had sold it to Officer Foertschbeck.

Officer Gray, assisted by Officer Smalley, served arrest warrants on Danny and the appellant on February 13. On the evening of February 13 Officer Smalley was stationed in the basement of the store with instructions to signal Officer Gray when a transaction took place between the appellant and Danny. On this date Officer Gray followed Danny as far as the head of the stairs leading to the basement, received a signal from Officer Smalley, and arrested Danny at the head of the stairs as he was on his way out of the store. After his arrest a search of Danny's person revealed a packet of hashish wrapped in tin foil. Officer Gray then went down into the basement and arrested the appellant. Immediately thereafter Officer Gray explained the *Miranda* rights to the appellant and the appellant said he understood them. The manager of the store then arrived in the basement at which time Officer Gray explained that he had arrested Danny and the appellant for violations of the narcotic laws and

requested the manager's permission to search the premises for narcotics. The manager then informed the officer that he was not only privileged to search the premises but it would be appreciated if he would do so. At that point Officer Gray advised the appellant that they were going to search the premises and stated that if he knew where any drugs were kept, it would save a lot of time if he would advise him of their location. The appellant replied, "Go ahead, I don't have any drugs here." Officer Gray then proceeded to enter the small storage room adjoining the sales area of the shoe department. There in an open shoe box on a shelf they observed what appeared to be narcotics. The contents of the box consisted of several cigarette papers used for smoking marijuana, hashish, hashish pipes, hashish inside aluminum foil, a Methadone bottle with the appellant's name on it, a plastic bottle containing hashish and small pills which appeared to be LSD, and car keys which the appellant later identified as his. When Officer Gray confronted the appellant with these items, he asked him if there were more drugs in the store. The appellant replied, "There isn't any more; that's all there is." The contents of the shoe box were introduced in evidence over the appellant's objection.[2]

The testimony of the appellant showed that he was a 22 year old University student who was working as a part-time clerk in the shoe department of Irvins Department Store. He had been a user of narcotics and had been a participant in the Man Alive Program for treatment of his addiction since 1969. He was introduced to Danny Jones the last of January 1970 by some mutual friends. At that time Danny had informed him that he wanted to sell narcotics to raise money with which to get a friend out of jail. He further said that Danny wanted the appellant to keep the drugs at the store so he could get them handily when he made a sale on the street. When

---

2. The substances found in the shoe box which appeared to be hashish and LSD were later chemically tested and proved to be as suspected.

the appellant refused to go along with this suggestion, Danny threatened to tell the appellant's employer that he was a participant in the Man Alive Program. Thereupon the appellant, out of fear of losing his job, agreed to allow Danny to keep the drugs in the storeroom adjoining the shoe department. The appellant stated that he received no compensation for allowing Danny this privilege and that he did not personally use any of the stored drugs. Under this arrangement Danny came to the store and picked up the drugs after he had made a sale on the street. If there were other people in the basement when Danny arrived, the appellant would go into the storeroom, procure the narcotics, and deliver them to Danny. If there were no others present, Danny himself would get the drugs from the storeroom. He further stated that the only money he earned was from his part-time job with the store for which he was paid $30 to $35 a week. He accounted for the $200 found on his person at the time of his arrest by stating that it was money he was expecting to use to register for the second semester at the University. He also stated that the bottle of Methadone found in the storeroom was prescribed for him by the program and that his car keys were not inside the shoe box where the narcotics were found but on the shelf. He admitted that on February 13, 1970, both he and Danny went into the storeroom where he picked up some drugs from the shoe box and gave them to Danny. He further admitted that he had procured drugs for Danny from the storeroom on three other occasions when other persons were present in the shoe department.

An addict counsel with the Man Alive Program testified that routine examinations of the appellant during his participation in the program showed some use of drugs by him in violation of his commitments. An official of the University attended by the appellant testified the school records showed that a payment of $200 toward the appellant's second semester tuition was made on January 28, 1970. The next payment made toward tuition as revealed by the records was on September 16, 1970.

After both sides had rested their case, the appellant moved for a judgment of acquittal which the court denied.

I

The appellant's preliminary motion to suppress the evidence found in the shoe box because it was allegedly procured by an unlawful search and seizure was denied by the trial judge.

Clearly the owner of the store had a proprietary and possessory interest in it that entitled him to constitutional protection against an unreasonable search thereof. The undisputed evidence shows that the area searched was used by the store management for the storage of shoes and was in no way set aside for the private use of the appellant as an employee. In these circumstances we hold as a matter of law that the appellant had no right of privacy in the area searched. Concededly, he had no proprietary or possessory interest in the store premises. We therefore further hold as a matter of law that he had no right in the searched premises that entitled him to constitutional protection against an unreasonable search and seizure. See *Jones v. United States,* 362 U. S. 257 (1960) ; *Katz v. United States,* 389 U. S. 347 (1967) ; *Mancusi v. DeForte,* 392 U. S. 364 (1968).

The trial judge found that the store manager representing the store ownership had given his consent to the search. We hold he was not in error in so finding. In *Gross v. State,* 235 Md. 429 (1964) the Court of Appeals said at page 443 :

"* * * It is established law that a search by permission of the person entitled to constitutional protection from unreasonable searches is lawful as one of the exceptions to the general rule that reasonable searches must be made as the result of valid search warrants. * * *"

See also *Carter v. State,* 236 Md. 450, 453 (1964) ; *Dorsey and Gladden v. State,* 2 Md. App. 40, 42 (1967). Ap-

plying the holding in *Gross, supra* to the facts of this case, we conclude that Judge Harris was correct in denying the appellant's motion to suppress and admitting the evidence seized at the trial.[3]

## II-A

The appellant claims by his second contention that the trial court incorrectly interpreted the jury's verdict as a finding of guilt of a conspiracy to violate the narcotic laws prohibiting the *sale* of controlled narcotics rather than the lesser crime of a conspiracy to unlawfully *possess* narcotics. The indictment charged that the appellant and William D. Jones [Danny] on January 26, 1970 "unlawfully conspired together and with each other and with certain other persons * * * *to violate the Narcotic Laws of the State of Maryland."* (emphasis added.)

In defining the common law crime of conspiracy, this Court said in *Wilson, Valentine & Nutter v. State,* 8 Md. App. 653 at page 671:

> "* * * Conspiracy is a combination by two or more persons to accomplish a criminal or unlawful act, or to do a lawful act by criminal or unlawful means. The gist of conspiracy is unlawful combination and no further overt act is required to constitute it. * * *"

See also *Jones v. State,* 8 Md. App. 370; *Harper v. State,* 6 Md. App. 1; *Williams and McClelland v. State,* 5 Md. App. 450. In speaking of the proof necessary to establish a *combination* under the definition of conspiracy, this Court speaking through Chief Judge Murphy in *Silbert v. State,* 12 Md. App. 516 said at page 528:

> "* * * [T]o establish a conspiracy, it is not necessary that there be any formal agreement

---

3. Under this ruling we do not reach the question of whether in the circumstances of this case the appellant freely and voluntarily gave his consent to the police to search the storeroom nor the question of whether the search was valid as incidental to the appellant's arrest.

manifested by formal words, written or spoken; it is enough if the parties tacitly come to an understanding in regard to the unlawful purpose and this may be inferred from sufficiently significant circumstances. * * *"

See also *Randolph v. State*, 10 Md. App. 89, 92. Applying the principles enunciated in *Wilson* and *Silbert* to the evidence in this case, it is clear that it is legally sufficient to justify finding the appellant guilty of a conspiracy to unlawfully *sell* marijuana in violation of the "Narcotic Laws of the State of Maryland" on January 26, 1970.

The trial judge in his instruction to the jury in effect advised them that if they found the appellant and Danny had conspired and agreed among themselves upon a scheme or plan whereby the appellant was to supply and Danny was to unlawfully sell hashish and that pursuant to such plan the appellant did supply and Danny did unlawfully sell hashish to Officer Foertschbeck on January 26, 1970, then the evidence would be sufficient to find the appellant guilty of conspiracy to violate the narcotic laws as charged.[4] The court's instructions did not refer to a conspiracy to unlawfully possess hashish or marijuana nor to a conspiracy to violate the narcotic laws in any other manner than by sale.[5]

In imposing sentence the trial judge stated in effect

4. The trial judge in his instructions to the jury said: "* * * You must consider whether either Quaglione [appellant] or Jones [Danny] among themselves or with others conspired and agreed upon an illegal scheme or design, or arrangement to violate the narcotic laws. In other words, if you find as a fact that on January 26, 1970, Quaglione, the defendant in this case, agreed with Jones that Jones would obtain hashish or marijuana from Quaglione for the purpose of illegally selling that drug, then this would be sufficient evidence subject to the general principles and burden of proof rules which I have outlined to you, to find him guilty of conspiracy to violate the narcotic laws in the first indictment. * * * [T]he criminal offense charged is violation of the narcotic laws and the act itself involved is the sale of hashish with Quaglione allegedly supplying it to Jones and Jones allegedly selling it to Officer Foertschbeck."

5. Since there was no objection to the instructions at the time of trial, the adequacy thereof is not before this Court for review. See Md. Rules 756 f and 1085.

that the evidence showed the basis of the jury's verdict was the sale of marijuana to Officer Foertschbeck on January 26, 1970. He therefore interpreted the verdict as a finding of guilt of a conspiracy to unlawfully sell marijuana. Considering the evidence in the light of the court's instructions together with the wording of the charge, we hold that the trial judge did not clearly err in his interpretation of the jury's verdict.[6]

Md. Code, Art. 27, § 300 (c) as amended by Chapter 237 of the Acts of 1970 authorized the imposition of a maximum five year sentence as the penalty for the unlawful sale of marijuana.[7] Art. 27, § 38 authorized a sentence for persons convicted of conspiracy "not to exceed the maximum punishment provided for the offense he or she conspired to commit." We therefore further conclude that the trial judge was not in error in imposing a sentence of five years imprisonment as a consequence of the conviction.

### II-B

In presenting his second contention the appellant further claimed that the indictment was so vague in its wording that it failed to charge an offense and therefore that this Court should reverse the judgment below on the ground of a lack of jurisdiction of the lower court to entertain the charge. (Md. Rule 1085). The indictment, as heretofore related, charged the appellant with conspiring "to violate the Narcotic Laws of the State of

---

6. In *Mills v. State*, 12 Md. App. 449, 465 this Court held under an indictment charging a conspiracy to violate the narcotic laws that it was made clear *at the disposition hearing* what sections of the narcotic laws were intended to be violated as the object of the conspiracy and consequently what sentences were authorized to be imposed. (The sufficiency of the indictment was not challenged). In *Randolph v. State, supra,* we interpreted the factual posture of the case in order to determine which of several possible burglary offenses were involved as the objects of a conspiracy "to violate the Burglary Laws of the State of Maryland" as charged in the indictment.

7. Md. Code, Art. 27, § 300 (b) as amended by Chapter 237 of the Acts of 1970, which was effective at the time of trial, reduced the maximum penalty for possession of marijuana to one year but § 300 (c) retained the five year maximum penalty for the sale of marijuana.

Maryland." The sufficiency of an indictment to charge a criminal conspiracy was thoroughly considered by the Court of Appeals in *Hurwitz v. State,* 200 Md. 578 (1952). (See also *McGuire v. State,* 200 Md. 601, 604; *Piracci v. State,* 207 Md. 499, 515). In *Hurwitz* the Court carefully reviewed the Maryland cases involving the subject of conspiracy beginning with *State v. Buchanan,* 5 H. & J. 317 (1821).

In *Hurwitz,* the Court held that the wording of an indictment charging the appellant and other named persons with having "unlawfully conspired * * * *to violate the lottery laws of the State"* (emphasis added) was legally sufficient to charge the offense of conspiracy without particularizing what part of the lottery laws were intended to be violated as the object of the conspiracy. In so holding the Court said at page 589, "* * * in view of the evident meaning of 'the lottery laws of the State' we hold that the * * * indictment validly stated an offense and not a mere conclusion of law * * *." The Court then quoted with approval from *State v. Buchanan* as follows at page 584:

> "* * * That in a prosecution for a conspiracy, it is sufficient to state in the indictment, *the conspiracy and the object of it;* and that the means by which it was intended to be accomplished need not be set out, being only matters of evidence to prove the charge, and not the crime itself, * * *." (emphasis supplied.)

In commenting on the rule enunciated in *Buchanan* as to the sufficiency of an indictment charging conspiracy, the Court in *Hurwitz* at page 587 quoted from *Lanasa v. State,* 109 Md. 602, 608-609 as follows:

> "* * * As it is not essential to the completion of the offense [conspiracy to destroy property of a third party] that any particular property should be destroyed, it is, therefore, not required that the object of the unexecuted conspiracy

should be set out with great particularity and certainty in the indictment, because only such facts need be stated as shall fairly and reasonably inform the accused of the offense with which he is charged. To require more in such a case would be to put an unnecessary burden upon the State, and make it impossible in many cases to secure the conviction of the guilty. * * *"

Md. Code, Art. 27, § 40 has simplified the form of an indictment for conspiracy. It is there provided that a form substantially to the following effect shall be sufficient: "That A-B and C-D on the ........... day of ......................., 19......., at the County (City) aforesaid unlawfully conspired together to murder X-Y (or other conspiracy here *stating briefly the object of the conspiracy*) against the peace, government and dignity of the State." (emphasis added.)

Applying the rationale and holding in *Hurwitz* and the cases therein cited and the provisions of Md. Code, Art. 27, § 40 to the facts of this case, we hold that the subject indictment did sufficiently charge a conspiracy and *state the object of it.* The meaning of the phrase "narcotic laws of the State of Maryland" is evident and apparent to the appellant to the same extent that the meaning of "the lottery laws of the State" were held to be evident and apparent to the accused in *Hurwitz.*[8] We therefore hold that the indictment was legally sufficient to charge the offense of conspiracy and that the lower

---

8. The holding in the instant case is based principally on the rationale in *Hurwitz, supra* because the factual situations in the two cases are analogous. However, we are not unmindful of the fact that in *Hurwitz* the Court pointed out that in holding the meaning of the phrase "the lottery laws of the State" to be *evident* as a statement of the object of the conspiracy, the Court did not approve "as a general formula for the statement of the object of a conspiracy 'to violate the . . . laws of the State.'" *Ibid.* at 589.
We are not here determining the appellant's right to require the particulars of the charge under Md. Rule 715 upon a reasonable demand being made.

court did have jurisdiction to entertain the trial of the offense charged.

## III

The appellant's third contention relates to the trial court's failure to grant his motion for a mistrial made during the State's Attorney's closing argument before the jury. The remark of the State's Attorney that was objected to was to the effect that a witness whose name had been mentioned as a co-conspirator was not produced by the State because the witness (Canary) was in Canada. Prior to this remark, counsel for the appellant had made the observation to the jury in his closing argument that the State had failed to produce Canary. The State's Attorney's remarks were in reply thereto. There was no evidence to establish where Canary was located during the trial. After the objection and at the instance of counsel for the appellant, Judge Harris advised the jury that since there was no evidence before them as to where Canary was located at the time of trial, they were to disregard the remark. We hold that this explanation cured any possible prejudicial effect of the remark and that the trial judge was correct in denying the motion for a mistrial.

## IV

The appellant's fourth contention claims that the trial court erred in failing to grant his motion to set aside the verdict of guilty on the conspiracy charge because of the inconsistency in the jury's findings on this charge and its finding of not guilty on an indictment charging the appellant with possession and control of marijuana on February 13, 1970. The fact that the appellant may not have had marijuana in his possession or control on February 13, does not preclude a finding by the jury that an agreement existed between him and Danny to have Danny sell hashish unlawfully to purchasers on January 26, 1970. As heretofore stated, the gist of the crime of conspiracy consists of an understanding or plan

between two or more persons to (among other things) commit an unlawful act. The crime is complete when the agreement is entered into without the necessity of any overt act on the part of any of the parties to the conspiracy. See *Hurwitz, supra,* at 584; *Greenwald v. State,* 221 Md. 235, 250-251.

We conclude therefore that there is no inconsistency in the two verdicts and that the evidence was legally sufficient to sustain the verdict of guilty under the conspiracy indictment. We therefore hold the trial judge was not clearly in error in denying the appellant's motion to set aside the verdict as well as his motion for a judgment of acquittal.

*Judgment affirmed.*
*Appellant to pay costs.*