549 A.2d 1145

**Warren I. SIMPSON**

v.

**STATE of Maryland.**

**No. 252, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Nov. 9, 1988.

Michael R. Malloy, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Kreg Paul Greer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Stuart O. Simms, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Submitted before ROSALYN B. BELL, ROBERT M. BELL and POLLITT, JJ.

ROBERT M. BELL, Judge.

Warren I. Simpson, appellant, was charged in a ten count indictment, along with his co-defendant, James Carr, with

various narcotics offenses.[1]  He was tried by a jury in the Circuit Court for Baltimore City.  His motion for judgments of acquittal as to counts 1 and 3 was granted at the end of the State's case, and, upon that happening, the State elected not to present the conspiracy counts to the jury.  Appellant was thereafter convicted of possession of cocaine and possession of heroin and sentenced to concurrent two years sentences.  On appeal from those judgments, he questions the sufficiency of the evidence to sustain the convictions and the propriety of the court's refusal to merge the convictions.

Police officer Frances Edwards explained the events leading to appellant's arrest.  She was part of a Baltimore City Police team conducting drug investigations in the northwest area of the city.  In the late afternoon of May 1, 1987, attired in plainclothes and driving an unmarked car, Officer Edwards performed her role in the investigation, to conduct surveillance of a playground located in the rear of the 4900 block of Denmore Avenue.  The other officers on the team were in backup positions several blocks away.  Having arrived at the surveillance target and parked in a nearby alley, she observed four men standing together on the playground.  Two of the men were identified as appellant and James Carr; the other two were never identified.  After Officer Edwards had watched the group for a few moments, appellant walked away toward Woodland Avenue. He returned two to three minutes later, at which time, he spoke to Carr privately.  They then walked to another part of the playground where an automobile tire was on the ground.  After appellant gave Carr some money, Carr "reached down beside the tire, picked up a brown paper bag, opened it up, and gave [appellant] an item."  Appellant then left the playground, again going in the direction of Woodland Avenue.

---

1.  Counts 1 and 3 charged possession with intent to distribute heroin and cocaine, respectively.  Counts 2 and 4 charged the simple possession of those substances.  Remaining counts charged appellant and Carr with various conspiracies.

Officer Edwards called her backups, told them that she thought she had seen a drug transaction, and gave them a description of appellant and Carr. A short time later, appellant was arrested after a chase. Appellant had neither money nor drugs in his possession when he was arrested.

Carr, who had left the area when the police arrived, returned to the playground and was arrested. The brown paper bag was seized at that time and found to contain seven capsules and 18 glassine bags. Subsequent chemical analysis revealed that the capsules and glassine bags contained cocaine and heroin, respectively.

### Motion for Judgments of Acquittal

■ Before proceeding to address the merits of appellant's sufficiency argument, we will address an issue which neither party has explicitly raised: whether the issue has been preserved for our review. We think, however, that, by failing to raise the issue, the State has implicitly conceded that the issue is preserved. We agree with that concession.

As we have previously reported, appellant moved for judgments of acquittal at the end of the State's case. There can be no doubt but that, in arguing in support of the motion, he stated with particularity all reasons why the motion should be granted as to counts 1 through 4. *See* Maryland Rule 4–324(a); *State v. Lyles*, 308 Md. 129, 134–36, 517 A.2d 761 (1986). The trial court granted appellant's motion as to counts 1 and 3, but denied it as to counts 2 and 4, whereupon appellant elected not to put on a defense. His counsel therefore advised the court that she would "renew" her motion and adopt the arguments previously made. That motion was also denied.

This court in a very recent decision, *Warfield v. State*, 76 Md.App. 141, 147, 543 A.2d 885 (1988), cert. granted, 314 Md. 95, 548 A.2d 845 (1988), held that *"all* motions for judgment of acquittal, whether in the nature of an 'original' motion or a so-called 'renewal' motion, must be particularized in accordance with Rule 4–324(a)." (Emphasis in original) There is no doubt that the renewal motion in this case

was not so particularized. *The* question presented, therefore, is whether *Warfield* applies under the circumstances here presented. To answer that question, we look at the analysis in *Warfield* as well as the interpretation given to Maryland Rule 4–324(c).

Our Opinion in *Warfield* made clear the rationale for the Rule, which we enunciated thusly:

> The intent of Rule 4–324, in requiring defendants to particularize their arguments to preserve the sufficiency issue for appellate review, is to allow the trial court the opportunity to consider fully the basis for the motion. A substantial amount of evidence may be presented between a motion for judgment of acquittal made at the end of the State's case and the close of the case. It would be too great a burden to require a trial judge to make an intelligent and informed ruling on a subsequent motion made at the close of all the evidence without the benefit of reargument, since, at that point, the trial judge would be required to consider the motion on the basis of *all* the evidence. (Emphasis in original)

*Warfield,* 76 Md.App. at 147, 543 A.2d 885. There, Warfield put on evidence after his original motion for judgment of acquittal had been denied. Only then did he "renew" his motion for acquittal. It was in this context that we said: "Because of this inherent difficulty the proper procedure would be to require that *all* motions for judgment of acquittal, whether in the nature of an 'original' motion or a so-called renewal motion, must be particularized in accordance with Rule 4–324(a)." *Id.* Also significant in our analysis was the effect of Maryland Rule 4–324(c) on the viability of a motion, made and denied at the close of the State's case, but which was sought to be "renewed" at the close of all the evidence. That Rule provides:

> (c) *Effect of Denial.*—A defendant who moves for judgment of acquittal at the close of evidence offered by the State may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made.

*In so doing, the defendant withdraws the motion.* (Emphasis added)

In *Warfield,* we accepted the State's argument, premised on the Rule, that an initial motion for judgment of acquittal becomes a legal nullity "incapable of being renewed" once it has been withdrawn by the presentation of evidence in the defense case. 76 Md.App. at 145–46, 543 A.2d 885. We put it thus, "Once he produced evidence, Warfield's original motion was no longer in existence and was not renewable." 76 Md.App. 147, 543 A.2d 885.

In this case, however, appellant did not offer evidence after his motion for judgment of acquittal had been denied; rather, he rested his case and then "renewed" his motion. Neither *Warfield* nor Rule 4–324(c) expressly addresses this situation. On the other hand, neither supports the conclusion that, under these circumstances, appellant's sufficiency argument is not preserved.

The Rule is clear and unambiguous in its statement that it is the offering of evidence that withdraws the motion. It contains no suggestion that the mere resting of one's case, without the offer of evidence, has the same effect. Indeed, in a jury trial, where a defendant does not offer any evidence after his motion made at the end of the State's case, that motion necessarily is transformed into one made at the close of all the evidence. *See* Maryland Rule 4–324(a).[2] It follows, then, that where, as here, the initial motion was supported by particularized argument consistent with the requirements of the Rule and has not been withdrawn, the renewal motion was simply redundant and,

---

**2.** That section provides:
(a) *Generally.*—A defendant may move for judgment of acquittal on one or more counts, or on one or more degrees of an offense which by law is divided into degrees, at the close of the evidence offered by the State and, in a jury trial, at the close of all the evidence. The defendant shall state with particularity all reasons why the motion should be granted. No objection to the motion for judgment of acquittal shall be necessary. A defendant does not waive the right to make the motion by introducing evidence during presentation of the State's case.

thus, totally unnecessary. In short, the predicate for appellate review is the still viable original motion; the existence of the renewal motion and its adequacy in terms of particularization is immaterial. Our opinion in *Warfield* does not hold, or even suggest, otherwise. We hold that the issue of the sufficiency of the evidence is preserved for our review.

### The Merits

■ As he did below, appellant argues that, no matter whether it may be inferred that the item given to appellant was either heroin or cocaine, the evidence was still insufficient to justify a finding of guilt on either possession of heroin or possession of cocaine. This is so, he asserts, because the evidence was insufficient to prove *which* it was or whether it was both.[3]

The State, rather than responding to appellant's argument in context, notes that a conviction may be obtained on

---

3. The trial court's response to the argument was:
   Well, we just don't know. We just don't know. So to some extent there's some speculation, guesswork, as to whether he received one item or both items. It's certainly enough evidence for the jury that he received a drug that was illegal. So the question is does the defendant walk as a matter of law because the State can't pinpoint which of the two illegal drugs he received.

   \* \* \* \* \* \*

   Well, you [the prosecutor] don't seem to have a response. But I'll give you my response. If the evidence is sufficient to prove that the defendant received an illegal drug, I'm not going to say that he walks because the State can't prove which of the two illegal drugs he received, if the jury finds he received an illegal drug, if the jury finds that he received both illegal drugs. Even if the evidence is insufficient to prove he received two items, but it's sufficient that he received only one, he's not going to walk in this court until an appellate court tells me that he walks because that's just such a gross injustice in permitting someone to escape on that kind of theory. I haven't had a chance to research. I will not have a chance to research that before the end of the trial before a decision is made. But I'm not letting him walk on that ground because there is something obviously grossly unjust in that theory. If the jury convicts him of both, I'll just make it concurrent.

   What comes through most clearly in this ruling is the extent to which the court recognized that the State had not proven which of the two drugs, if either, appellant possessed and that the court, by denying the motion, permitted the jury to speculate.

the basis of circumstantial evidence and that flight may be considered in determining guilt or innocence. But critical to its argument is a matter previously rejected by the court, *i.e.*, that "[t]he jury could reasonably infer from the evidence presented by Officer Edwards that Simpson and his co-defendant, Carr, were distributing drugs together from the 'stash' at the tire in the playground." Appellant argued below that the State produced insufficient evidence to prove that he possessed the intent to distribute either heroin or cocaine. Following his argument, there was a colloquy between the court and the State:

MS. NATHAN: The evidence was that the bag itself only contained items that were either heroin or cocaine. Then Mr. Carr went into that bag, removed an item and he handed it to Mr. Simpson and I think the evidence ta' most favorably to the State would indicate it had to be ₐₙ item of either heroin or cocaine and that was what was handed to Mr. Simpson to then go, based upon the officer's expertise to go deliver to someone.

THE COURT: Yeah. But what about the intent to distribute portion of the charges? I think that's primarily the thrust of the motion.

MS. NATHAN: I think based upon her training and expertise, she said he was back and forth. Therefore, acting as a runner to give to other people. The fact he didn't have it on him when he was arrested indicates that it was not for his own personal use because it was not on his person at the time he was arrested. Therefore—

THE COURT: What was her testimony about that?

MS. NATHAN: The officer's testimony was that he had been back and forth to Mr. Carr.

THE COURT: As she described, he talked to Simpson. Simpson talks to Carr. Simpson leaves. Comes back a few minutes later, gives Carr money and takes an item. Now what testimony from the officer was there to support the view that he was a runner rather than a buyer? What did she say?

MS. NATHAN: I thought she said she thought a narcotics transaction was occurring insofar as this defendant acting as a runner for Mr. Carr.

THE COURT: Did she say that?

MS. SHEPHERD [Defense counsel]: My recollection is that she did not because I certainly would have objected had she tried to say that. It is in her report and it's in her statement of charges.

THE COURT: I must say I don't remember her being asked that.

MS. SHEPHERD: That's why I asked no questions on cross-examination.

MS. NATHAN: The argument in the light most favorable to the State at this juncture is that he was acting to deliver to someone else because the drugs were not found in his possession.

THE COURT: I don't know how I could let them speculate on that.

MS. NATHAN: That's the State's argument with reference to this defendant.

THE COURT: I'll grant the motion on counts, I think it's 1 and 3.

Moreover, the jury was not instructed, nor was there a request that they be instructed, as to participation. What's more, the State did not make the argument, in its closing argument, that appellant was engaged in the criminal enterprise. There is, then, absolutely no basis for the State's argument on appeal. We gather from the argument that the State chose to make on appeal that it recognizes it as the only basis upon which the evidence presented is capable of being made sufficient.

The evidence bearing on what appellant possessed, if anything, was the testimony of Officer Edwards. All her testimony proved was that appellant gave Carr some money and that Carr reached inside a brown paper bag and gave appellant an item from a brown paper bag. She did not testify concerning what the item was or even whether it

was a single item or more than one. To be sure the evidence shows that the only substances found in the brown paper bag were heroin and cocaine and, thus, it could be inferred that appellant possessed either heroin or cocaine, but that does not suffice to prove which of them, or whether he possessed both. As to that, we can only speculate. Even in the light most favorable to the State, no rational juror could find beyond a reasonable doubt, on these facts, that appellant possessed heroin *and* cocaine. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The motion for judgments of acquittal should have been granted.

In view of our resolution of the sufficiency issue, we need not address the merger question.

JUDGMENTS REVERSED.

COSTS TO BE PAID BY MAYOR AND CITY COUNCIL OF BALTIMORE.