586 A.2d 32

Roy **CAMPBELL**

v.

**STATE of Maryland.**

**No. 374, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Feb. 27, 1991.

Julia Doyle Bernhardt, Asst. Public Defender (Alan H. Murrell, Former Public Defender, on the brief), Baltimore, for appellant.

Kreg Paul Greer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Alexander Williams, Jr., State's Atty. for Prince George's County, Upper Marlboro, on the brief), for appellee.

Submitted before BISHOP and CATHELL, JJ., and H. KEMP MacDANIEL, Judge (Retired), Specially Assigned.

CATHELL, Judge.

Roy Campbell, the appellant, was convicted by a jury in the Circuit Court for Prince George's County (Melbourne, J.) of conspiracy to violate the controlled dangerous substance laws, possession of cocaine with intent to distribute, possession of cocaine, and possession of paraphernalia. He was committed to the custody of the Division of Correction for ten years without the possibility of parole in accordance with Md.Ann.Code art. 27, § 286 (1957, 1987 & Supp.1990),[1] ten years concurrent for the conviction of possession of cocaine with intent to distribute, and four years concurrent for the conviction of possession of paraphernalia. The court merged the possession of cocaine conviction into the conviction of possession of cocaine with intent to distribute. On appeal, the appellant contends that:

---

1. Neither the docket entries, nor the commitment record reflects the mandatory sentence. The sentencing transcript, page 8, does so reflect.

1. The trial court lacked jurisdiction to convict and sentence him of "conspiracy to violate the controlled dangerous substances laws"; and

2. The court erred in denying his motion to dismiss for violation of Rule 4–271.

The record before us shows that pursuant to a warrant, the appellant and others were arrested for drug transactions occurring at a house in Landover, Maryland. Drug activity had been observed from the house over a period of time.

During the execution of a search warrant on April 20, 1989, while 10 to 12 neighborhood people were present in the house, cocaine was seized in the basement, phencyclidine was discovered in a refrigerator in an upstairs bedroom, and drug paraphernalia was discovered throughout the house. Thereafter, investigations determined that drug activity, including curbside service, was recurring at the subject address. On May 31, another search warrant was executed. When this warrant was executed, there were 18 people inside the house. Almost three grams of cocaine were discovered on a mirror in a co-defendant's bedroom. Next to it were several $50 rocks of crack cocaine. Several other rocks of crack cocaine were found hidden behind paneling, on the basement floor, and on a bedroom floor. Upstairs, cocaine was found in another bedroom. Drug paraphernalia was found throughout the house.

## I

Appellant first contends that the indictment charging him, in pertinent part, with conspiracy to "violate the controlled dangerous substances law of the State of Maryland," failed to state a cognizable offense. He argues that, because it failed to specify the crime which was the object of the conspiracy, the conspiracy charge failed to give him notice of the precise nature of the charge against him, and that the charge was not specific enough to allow him to determine the maximum penalty he would face if convicted.

■ The appellant did not object to the charging document in the court below. As to his complaint that the indictment failed to give him notice, he has waived our review of it. Md.Rule 4–252(a). However, the claim that an indictment fails to charge a crime is jurisdictional, *State v. Chaney,* 304 Md. 21, 497 A.2d 152 (1985), and may be asserted at any time. Md.Rule 4–252(a)(2), *Williams v. State,* 302 Md. 787, 490 A.2d 1277 (1985).

■ Although the appellant concedes that in *Quaglione v. State,* 15 Md.App. 571, 292 A.2d 785 (1972), this Court held that an indictment charging conspiracy with others "to violate the narcotic laws of the State of Maryland" was legally sufficient, he nevertheless "urges this [C]ourt to reconsider" *Quaglione* and hold "that count 2" of the indictment "failed to state a cognizable offense." We decline.

The indictment in *Quaglione* alleged that the defendant and others

"unlawfully conspired together and with each other and with certain other persons * * * *to violate the Narcotic Laws of the State of Maryland.*"

*Id.* at 578, 292 A.2d 785 (emphasis in original). The indictment in the case *sub judice* alleged, in pertinent part, that Campbell and others

"conspired each with the other and with others ... *to violate the controlled dangerous substances law of the State of Maryland ....*" [Emphasis added.]

The issue in *Quaglione* was the sufficiency of the conspiracy allegation. In a case primarily involving a statute of limitations issue, *McMorris v. State of Maryland,* 277 Md. 62, 355 A.2d 438 (1976), the indictment contained identical language. While not directly approving the form of the indictment, the *McMorris* majority in a footnote stated "[i]f McMorris was uncertain as to what facts the State was proceeding upon under this count ... he could have demanded particulars...." *Id.* at 70, 355 A.2d 438. The Court, in another footnote, made reference to the dissent

before concluding "[u]nder the circumstances we do not regard it as in the interest of sound judicial administration to address ourselves to the sufficiency of the indictment." *Id.* at 71, 355 A.2d 438.

The dissent in *McMorris* included a vigorous attack on the conspiracy language of that indictment. Judge O'Donnell, in dissent, specifically directed the majority to our holding in *Quaglione*, stating:

> The only reported opinion, sustaining the validity of a count charging a conspiracy "to violate the narcotic law of the State of Maryland" is that by the Court of Special Appeals in *Quaglione v. State*, 15 Md.App. 571 [292 A.2d 785] ... where that court found that the "rationale *and holding* in *Hurwitz*" supported a finding that such a count validly stated the object of the conspiracy. [Emphasis in *McMorris*.]
>
> \*     \*     \*     \*     \*     \*
>
> As I see it, these bare similarities are not enough to bring the charge in *Quaglione* ... within the ambit of the holdings in *Hurwitz v. State*.[2]
>
> \*     \*     \*     \*     \*     \*
>
> For these reasons, reaching the validity of count 2 in the indictment, I would hold, as "a matter of jurisdiction," that it failed to charge an offense.
>
> \*     \*     \*     \*     \*     \*
>
> Lastly, I cannot agree with the view expressed by my brethren with the observation ... when they note ... that had the appellant made a demand for particulars ... and thereby have placed a limitation upon the scope of the proof, his failure to do so, inferentially sustains the view that count 2 validly charged an offense.

*Id.* at 83–88, 355 A.2d 438. The dissent concluded:

> Even though the issue ... was not directly raised ... nor expressly spelled out within our writ of certiorari, I

---

2. *Hurwitz v. State,* 200 Md. 578, 92 A.2d 575 (1952).

believe that the failure of count 2 ... is properly within the ambit of our review.

*Id.* at 91, 355 A.2d 438 (citations omitted).

Our analysis of *McMorris* leads us to conclude that the dissent's assertion that the Court of Appeals had discretion to consider the jurisdictional issue raised by the alleged failure of the count to state a cause of action was correct. We then note that the majority in *McMorris* chose not to review that issue and that, because the dissent attacked our holding in *Quaglione,* the Court rejected the dissent's invitation to overrule the *Quaglione* holding.

We further pointed out in *Haina v. State,* 30 Md.App. 295, 352 A.2d 874, *cert. denied,* 278 Md. 723 (1976), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977), that indictment language which stated that the appellant

'unlawfully conspired to violate the controlled dangerous substance laws of the State of Maryland'.... follows the statutory form set out in Md.Code, Art. 27, § 40 and is sufficient without specifying the particular drug involved.[3] *Scarlett v. State,* 201 Md. 310 [93 A.2d 753] ... (1953) and *Quaglione v. State,* 15 Md.App. [571, 292 A.2d 785] ... (1972).

*Id.* at 314, 352 A.2d 874. *Scarlett,* like *Hurwitz,* was a lottery case. The present form of conspiracy indictment set out in Md.Ann.Code art. 27, § 40 (1987) remains essentially as it was at the time of our decision in *Haina.*

Campbell directs our attention to *State v. Simpson,* 318 Md. 194, 567 A.2d 132 (1989), for the proposition that the substance must be identified in the charging document. In *Simpson,* the Court of Appeals was concerned with trial evidence where the identification of the substance defined the offense, *i.e.,* defined the criminal act. *Simpson* did not

---

**3.** The *McMorris* dissent appeared to indicate that its objections to the sufficiency of such language were not addressed to its failure to specify the particular drug involved but to the failure to specify the activity involved, *i.e.,* sell, distribute, manufacture, possess, etc.

concern the language of charging documents nor the crime of conspiracy.

We said in *Wooten–Bey v. State*, 76 Md.App. 603, 547 A.2d 1086 (1988), *aff'd*, 318 Md. 301, 568 A.2d 16 (1990), that "Section 38 provides that punishment for a person convicted of conspiracy shall not exceed the punishment of the crime he or she conspired to commit. The gist of the common law crime of conspiracy is the unlawful combination to commit a criminal act—no overt act is required." *Id.* at 629, 547 A.2d 1086 (citing *Quaglione* ). In *Quaglione*, we acknowledged the practice of determining the specific narcotic contemplated in the conspiracy during the trial itself in our approval of the form of the indictment used.

The Court of Appeals opined in *Winters v. State*, 301 Md. 214, 482 A.2d 886 (1984), that the State's use of the short form conspiracy indictment set out in Md.Ann.Code art. 27, § 40 was sufficient. The indictment in *Winters*, in pertinent part, provided that the appellant and others had conspired to violate the "Maryland Income Tax Laws, Article 81, § 279 *et. seq.*" *Id.* at 233, n. 2, 482 A.2d 886, n. 2. The Court noted that:

> although the language of Count One stated the conspiracy, it did not properly allege the object of the conspiracy, thus, it is argued, the count was defective. Appellant contends that since the income tax laws can be violated in a variety of ways, the indictment should set out the particular means by which he and Osborn conspired ... to violate those laws.

*Id.* at 234, 482 A.2d 886. The Court disagreed, stating in part:

> It is well settled in Maryland that so long as the object of the conspiracy is set forth in the indictment there is no necessity to also set forth the means by which the conspiracy was intended to be accomplished. *See ... Quaglione v. State*, 15 Md.App. 571, 292 A.2d 785 (1972) (conspiracy to violate the narcotic laws of the state held sufficient). All of these cases demonstrate a consistent holding on the issue dating back to *State v. Buchanan*, 5

H & J 317 (1821)....  We see no need to depart from this well settled law.

*Id.* at 234, 482 A.2d 886 (citations omitted).

As we interpret the cases, objections to the use of short form indictments in narcotic cases have been primarily two fold: (1) that they do not identify the controlled dangerous substance involved in the offenses;  and (2) that they do not identify the "act," *i.e.,* possession, distribution, smuggling, etc.  In the *McMorris* dissent, it was inferentially conceded that the identity of the "substance" was not required to be specified in the indictment when Judge O'Donnell stated, at 89, 355 A.2d 438:

> If, for instance, count 2 had alleged a conspiracy 'to sell narcotic drugs,' then arguably the object of the conspiracy would have been set forth, and a bill of particulars might have been available to specify the type of narcotic drug involved.  A bill of particulars, it seems, could be used to ascertain the *means* by which it is contended that a conspiracy charged was to be carried out.  [Citations omitted, emphasis in original.]

In *Winters, supra,* the Court of Appeals, referring to the tax offense alleged to have occurred, discussed the "means" in the sense of the act which constituted the conspiracy. There was no question of substance type, as there may be in a case of conspiracy to violate narcotic laws where the type of substance may well dictate the ultimate sentence. In *Winters,* the Court stated that it was sufficient to state the "object" of the conspiracy, *i.e.,* "to violate the Maryland Income Tax Laws" and that "the means by which it was intended to be accomplished need not be set forth."

Even the dissenter in *McMorris* conceded that the narcotic substance need not be identified in the indictment.  In *Winters,* the Court indicated that the specific activity need not be identified.  Thus, we conclude that our holding in *Quaglione* remains the law and is determinative of this question.  Therefore, we hold that neither the controlled dangerous substances, *i.e.,* cocaine, heroin, etc., nor the

activity, *i.e.*, possession, selling, distributing, etc., need be specified when the short form conspiracy indictment · is utilized.

We thus conclude that appellant's contention is without merit.[4]

## II

Appellant also contends that the court erred in denying his motion to dismiss for violation of Rule 4–271. He argues, "the trial judge applied the wrong standard in denying the motion because it did not appear that the State's purpose had been to deliberately circumvent the rule."

■ When criminal charges are *nolle prossed*, ordinarily, the time period for commencing trial begins to run upon the refiling. *Curley v. State*, 299 Md. 449, 474 A.2d 502 (1984). In *State v. Glenn*, 299 Md. 464, 474 A.2d 509 (1984), the Court of Appeals identified an exception where it was shown that the prosecutor's purpose was to circumvent the law.

Here, the court, after listening to arguments from the appellant and the prosecutor regarding the refiling of *nolle prossed* charges, determined that the State was not "deliberately" trying to circumvent the law. We perceive no error.

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.

---

**4.** To whatever extent there may have been merit in the contention that the *Hurwitz* rule should not have been applied to narcotic conspiracy cases, the continual reliance on *Quaglione* and its use as authority in subsequent cases have, as we see it, established it as the settled law in narcotic conspiracy cases.