601 A.2d 667

**Roy CAMPBELL**

v.

**STATE of Maryland.**

**No. 38, Sept. Term, 1991.**

Court of Appeals of Maryland.

Feb. 19, 1992.

Julia Doyle Bernhardt, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for petitioner.

Kreg Paul Greer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

In this case, we are asked to decide if an indictment charging "conspiracy to violate the controlled dangerous substances law of the State of Maryland" charges an of-

fense within the fundamental jurisdiction of the circuit court, for which that court lawfully could convict and sentence one so accused. Considering the appeal by Roy Campbell, the petitioner, from the judgment of the Circuit Court for Prince George's County convicting him of that charge, the Court of Special Appeals held that it did and, thus, affirmed. *Campbell v. State,* 86 Md.App. 158, 586 A.2d 32 (1991). Having granted certiorari at the behest of the petitioner, we shall do likewise.

Count two of the indictment filed against the petitioner, consistent with Maryland Code (1957, 1992 Repl. Vol) art. 27 § 40,[1] charged:

> The Grand Jurors of the State of Maryland, for the body of Prince George's County, on their oath do present that Joseph Spinelli Ciccarelli, Michael Joseph Ciccarelli, Sherri Lynn Ciccarelli and Roy NMN Campbell of Prince George's County, aforesaid, from June, 1986 through the 31st day of May, 1989, at Prince George's County, aforesaid, conspired each with the other and with others known and unknown to the State to violate the controlled dangerous substances law of the State of Maryland, in violation of the Common Law of Maryland, and against the peace, government and dignity of the State. (Conspiracy to violate CDS laws.)

Notwithstanding that, in the trial court, he did not object to the indictment, nor move to dismiss it, *see* Maryland Rule 4–252(a)(2)[2], in the Court of Special Appeals, petitioner ar-

---

1.  That section provides:

    In any indictment or warrant for the crime of conspiracy, it shall be sufficient to use a formula substantially to the following effect: "That A–B and C–D on the __ day of ____, 19__, at the County (City) aforesaid unlawfully conspired together to murder X–Y (or other conspiracy here stating briefly the object of the conspiracy), against the peace, government and dignity of the State."

2.  That rule provides:

    (a) Mandatory motions. In the circuit court, the following matters shall be raised by motion in conformity with this Rule and if not so

gued that, where commission of a crime is its object, a conspiracy indictment must identify that crime. When, he insists, the indictment does not "specify what crime or crimes were the object of the conspiracy it does not state a cognizable offense." (footnote omitted). For that proposition, the petitioner relies on *Garland v. State*, 112 Md. 83, 86–7, 75 A. 631, 633 (1910), particularly, the following passage:

> When the agreement is to commit an offense known to the common law or created by statute, it is not necessary, in stating the object of the conspiracy, to set out the offense with the accuracy or detail required in an indictment for that offense. The reason for the rule is that the crime of conspiracy does not consist in the accomplishment of the unlawful object, or in doing the acts by means of which the desired end is to be attained, but the essence of the offense is, as we have stated, the unlawful combination and agreement for any purpose that is unlawful or criminal.

*See also State v. Smith*, 197 Tenn. 350, 273 S.W.2d 143, 146 (1954). Moreover, the petitioner maintains that failure to identify the crime results in the failure of notice both of the precise nature of the charge as well as the maximum penalty faced.

The Court of Special Appeals held "that neither the controlled dangerous substances, *i.e.*, cocaine, heroin, etc., nor the activity, *i.e.*, possession, selling, distributing, etc. need be specified when the short form conspiracy indictment is utilized." *Campbell v. State*, 86 Md.App. at 165–66, 586 A.2d at 36. That holding was mandated, it asserted, by the holding in one of its prior cases, *Quaglione v. State*, 15 Md.App. 571, 292 A.2d 785 (1972), which holding, it

---

raised are waived unless the court, for good cause shown, orders otherwise:

> \* \* \* \* \* \*

(2) A defect in the charging document other than its failure to show jurisdiction in the court or its failure to charge an offense.

> \* \* \* \* \* \*

concluded, "remains the law and is determinative of this question." 86 Md.App. at 165, 586 A.2d at 36. To reach this conclusion, in addition to reviewing its decision in *Quaglione*, the court surveyed cases from this Court which addressed related issues. In particular, the court found *McMorris v. State*, 277 Md. 62, 355 A.2d 438 (1976),[3] with particular emphasis on the dissenting opinion, and *Winters v. State*, 301 Md. 214, 482 A.2d 886 (1984) instructive. Although the *Quaglione* court relied on this Court's opinion in *Hurwitz v. State*, 200 Md. 578, 92 A.2d 575 (1952), which was extensively discussed in the *McMorris* dissent, the intermediate court did not give it top billing when it decided this case.

■ One of the primary purposes of a charging document is to inform an accused of the accusation against him or her. *Williams v. State*, 302 Md. 787, 790–92, 490 A.2d 1277, 1279 (1985); *State v. Morton*, 295 Md. 487, 490, 456 A.2d 909, 911 (1983); Article 21 of the Maryland Declaration of Rights.[4] *See also* Maryland Rule 4–202 which implements the constitutional mandate. Subsection (a) of the rule requires the charging document to

---

**3.** The indictment in that case charged that McMorris and others "unlawfully conspired together and with each other and with certain other persons ... to violate the controlled dangerous substance laws of the State of Maryland," and the same allegation as contained in the indictment in Quaglione. The majority did not directly address the sufficiency of that indictment; it did note, however, that "[i]f McMorris was uncertain as to what facts the State was proceeding upon under this count ... he could have demanded particulars...." 277 Md. 62, 70 n. 4, 355 A.2d 438, 443 n. 4 (1976). The dissent, on the other hand, made a substantial attack on the sufficiency of the indictment and, necessarily, on the *Quaglione* holding. 277 Md. at 83–4, 355 A.2d at 450–51.

**4.** Article 21 of the Maryland Declaration of Rights provides, in relevant part:
That in all criminal prosecutions, every man has a right to be informed of the accusation against him; to have a copy of the Indictment, or charge, in due time (if required) to prepare for his defence....

"contain a concise and definite statement of the essential facts of the offense with which the defendant is charged and, with reasonable particularity, the time and place the offense occurred."

Subsection (b), which requires charging documents to be signed, makes clear that a plea to the merits of an indictment not signed by the State's Attorney, or his designee, waives that defect. *See also* Maryland Rule 4–252(a)(1) and (2). Subsection (d) provides:

"A charging document need not negate an exception, excuse, or proviso contained in a statute or other authority creating or defining the offense charged."

■ Addressing the purpose underlying the constitutional requirement, in *Williams*, Chief Judge Murphy, speaking for the Court, wrote that they included:

(1) putting the accused on notice of what he is called upon to defend by characterizing and describing the crime and conduct;

(2) protecting the accused from a future prosecution for the same offense;

(3) enabling the accused to prepare for his trial;

(4) providing a basis for the court to consider the legal sufficiency of the charging document; and

(5) informing the court of the specific crime charged so that, if required, sentence may be pronounced in accordance with the right of the case. *Ayre v. State*, 291 Md. 155, 163–64, 433 A.2d 1150 [, 1155] (1981). We have repeatedly emphasized that every criminal charge must, first, characterize the crime; and, second, it must provide such description of the criminal act alleged to have been committed as will inform the accused of the specific conduct with which he is charged, thereby enabling him to defend against the accusation and avoid a second prosecution for the same criminal offense. (Some citations omitted)

302 Md. at 791, 490 A.2d at 1279. At issue in *Williams* was the sufficiency of an indictment charging that the accused

"unlawfully with a dangerous and deadly weapon did rob the complainant," without, however, an express allegation that he intended permanently to deprive the owner of the property. We held that the indictment was sufficient:

> As the criminal information sufficiently characterized the crime of armed robbery, it was not defective for lack of jurisdiction in the circuit court. Although the customary method of identifying the particular crime charged has been to aver its essential elements in the charging document, that is not the exclusive method, and the use of other words that sufficiently characterize the crime will satisfy the jurisdictional requirement.... This does not mean that the charging document will be immune from attack, for it may otherwise be deficient in failing to fully inform the accused of the specific conduct with which he is charged, and in that event a timely motion pursuant to Rule 4–252(a) may be filed[3]
>
> [3] None of the cases upon which the dissent places reliance actually hold[s] (albeit some may indicate) that to invest a court with jurisdiction over a criminal charge, every essential element of the crime must be alleged in the charging document.

302 Md. at 793, 490 A.2d at 1280. Of course, even though not all of the essential elements must be set forth in the charging document, enough must be alleged in order "to invest the circuit court with power to proceed to trial...." *State v. Chaney,* 304 Md. 21, 26, 497 A.2d 152, 155 (1985).

The issue for us to determine is whether that count of the indictment charging "conspiracy to violate the controlled dangerous substances law of the State of Maryland," sufficiently characterized the crime lodged against the petitioner; does it contain sufficient "essential elements" of the crime of conspiracy to invest the circuit court with jurisdiction to try the petitioner and, if convicted, punish him? If it does, then, even though the indictment may otherwise be defective, of which the court, if requested, could have taken cognizance, those defects not having been raised, the judgment was properly entered.

■ The crime of conspiracy is defined in Maryland as:

[T]he combination of two or more persons to accomplish some unlawful purpose, or to accomplish a lawful purpose by unlawful means. The essence of a criminal conspiracy is an unlawful agreement. The agreement need not be formal or spoken, provided there is a meeting of the minds reflecting a unity of purpose and design. [Furthermore], the crime is complete when the unlawful agreement is reached, and no overt act in furtherance of the agreement need be shown.

*Apostoledes v. State,* 323 Md. 456, 461–62, 593 A.2d 1117, 1120 (1991), quoting *Townes v. State,* 314 Md. 71, 75, 548 A.2d 832, 834 (1988). See *Monoker v. State,* 321 Md. 214, 221, 582 A.2d 525, 528 (1990); *Mason v. State,* 302 Md. 434, 444–45, 488 A.2d 955, 960 (1985). It is well settled that, in order validly to charge conspiracy, a charging document must allege both the fact of the conspiracy and its object. *Winters v. State,* 301 Md. at 234, 482 A.2d at 896; *Hurwitz v. State,* 200 Md. at 584, 92 A.2d at 577; *Quaglione v. State,* 15 Md.App. at 581, 292 A.2d at 791. It is equally well settled "that the means by which [the conspiracy] was intended to be accomplished need not be set out, being only matters of evidence to prove the charge, and not the crime itself, and may be perfectly indifferent...." *State v. Buchanan,* 5 H. & J. 317, 352 (1821). *See also Winters* and *Hurwitz,* both *supra.*

When the object of a conspiracy is the commission of a crime, alleging that fact in the charging document obviously would be a sufficient statement of the conspiracy's object. Nevertheless, "[i]t is ... not required that the object of the unexecuted conspiracy should be set out with great particularity and certainty in the indictment, because only such facts need be stated as shall fairly and reasonably inform the accused of the offense with which he is charged," *Hurwitz* 200 Md. at 587, 92 A.2d at 579, quoting *Lanasa v. State,* 109 Md. 602, 608–09, 71 A. 1058, 1060 (1909). Thus, because it is not essential to the proof of conspiracy that its object be attained, the crime need not be alleged with such specificity as to render an indictment for

it sufficient. *See Garland v. State,* 112 Md. at 86, 75 A. at 633. This is consistent with the fact that the offense of which the accused is required to be informed is the conspiracy, rather than the crime which is its object.

In *Hurwitz,* the defendant was charged with conspiring with others "unlawfully to violate the lottery laws of the State." 200 Md. at 581, 92 A.2d at 576. There, no particular lottery laws were mentioned, prompting the Court, at the outset to concede "that ordinarily the words 'unlawfully violate the lottery laws of the State' do not so definitely describe acts done as to charge an offense; they even seem too indefinite to charge acts contemplated as the object of a conspiracy." 200 Md. at 582, 92 A.2d at 577. Nevertheless, we held the indictment to be sufficient. 200 Md. at 589, 92 A.2d at 580.

In so doing, and in an effort to grasp the distinction between the object of a conspiracy and the means, or method, by which the conspiracy's object was to be attained, we reviewed our prior cases, in particular, *State v. Buchanan, supra.* Observing that

> in some respects these principles and rules seem to permit loosely drawn indictments, in other respects they express only the logic and common sense (and sometimes the sheer necessity) of the case. An indictment for robbery or larceny must ordinarily state the property stolen and the name (if known) of the owner. If, however, pickpockets conspire to ply their trade in a public place it is manifestly impossible to state what property they conspired to steal or whom they conspired to rob,

200 Md. at 585, 92 A.2d at 578, we recognized that, to some extent, whether the object of the conspiracy has properly been alleged depends on the circumstances.

We held, "[o]n the authority of *State v. Buchanan* and later cases in this court, and in view of the evident meaning of 'the lottery laws of the State', . . . that the first count of the instant indictment validly stated an offense and not a

mere conclusion of law." 200 Md. at 589, 92 A.2d at 580. Before stating that holding, we had commented:

> The subtitle "Lotteries" comprises §§ 423–438, inclusive. "The lottery laws of the State" in the instant indictment is identical in scope with sections 423–438 and with the laws referred to in section 696 and (in part) in section 435. The words "to violate the lottery laws of the State" have a promiscuous sound, but by comparison with sections 423–438, mean in substance, to participate in the conduct of a lottery, as broadly defined. Sections 423–438, with considerable tautology, prohibit drawing a lottery, selling a lottery ticket (sec. 423), keeping or permitting to be used a house as a place for selling lottery tickets (secs. 427–428), bringing into the State or having in possession (sec. 429) lottery tickets,—in short, practically every incident of the conduct of a lottery except buying a lottery ticket.

200 Md. at 588–89, 92 A.2d at 580. We also declined to "approve as a general formula for the statement of the object of a conspiracy, 'to violate the ... laws of the State.' " *Id.*

In *Quaglione,* the indictment charged conspiracy "to violate the narcotic laws of the State of Maryland." Quaglione argued that the indictment "was so vague in its wording that it failed to charge an offense," 15 Md.App. at 580, 292 A.2d at 791; thus, the lower court had no jurisdiction to try the case. Undeterred by the *Hurwitz* court's limitation of its holding and express refusal to approve a general formula for the statement of the object of a conspiracy, 15 Md.App. at 582 n. 8, 292 A.2d at 792 n. 8, the Court of Special Appeals rejected that argument. It held that "the subject indictment did sufficiently charge a conspiracy and *state the object of it.* The meaning of the phrase 'narcotics laws of the State of Maryland' is evident and apparent to the appellant to the same extent that the meaning of 'the lottery laws of the State' [was] held to be evident and apparent to the accused in *Hurwitz.*" 15 Md.App. at 582, 292 A.2d at 792 (emphasis in original). A defendant's right

to demand particulars, pursuant to the Maryland Rules was specifically reserved. *See* Maryland Rule 4–241(a).[5]

One of the issues in *Winters* was the propriety of the trial court's denial of the defendant's motion to dismiss the conspiracy count of an indictment. 301 Md. at 219, 482 A.2d at 888. That count, utilizing the statutory short form, alleged as the object of the conspiracy, the violation of the "Maryland Income Tax Laws, Art. 81, § 279 *et. seq.*, Annotated Code of Maryland." 301 Md. at 233 n. 2, 482 A.2d at 895 n. 2. The defendant argued: "Although the language of Count I stated the conspiracy, it did not properly allege the object of the conspiracy, thus, ... the count was defective." 301 Md. at 234, 482 A.2d at 896. In particular, he maintained that, given the number of ways the income tax laws could be violated, how this conspiracy proposed, or intended, to do so should have been alleged. *Id.* We rejected that argument, pointing out:

It is well settled in Maryland that so long as the object of the conspiracy is set forth in the indictment there is no necessity to also set forth the means by which the conspiracy was intended to be accomplished. *See Pearlman v. State*, 232 Md. 251, 192 A.2d 767 (1963) (conspiracy to cheat and defraud customers by wrongful and indirect means and false pretenses, etc. sufficient), *cert. denied*, 376 U.S. 943, 84 S.Ct. 797, 11 L.Ed.2d 767 (1964), *Piracci v. State*, 207 Md. 499, 115 A.2d 262 (1955) (conspiracy to defraud City of Baltimore—means to accomplish object of conspiracy need not be set out); *Scarlett v. State*, 201 Md. 310, 93 A.2d 753 (1953) (conspiracy to violate lottery laws sufficient to charge a crime), *cert. denied*, 345 U.S. 955, 73 S.Ct. 937, 97 L.Ed. 1377 (1953); *Quaglione v.*

---

**5.** Maryland Rule 4–241(a), in pertinent part, provides:
   (a) Demand. Within 15 days after the earlier of the appearance of counsel or the first appearance of the defendant before the circuit court pursuant to Rule 4–213(c), the defendant may file a demand in the circuit court for a bill of particulars. The demand shall be in writing, unless otherwise ordered by the court, and shall specify the particulars sought.

*State,* 15 Md.App. 571, 292 A.2d 785 (1972) (conspiracy to violate the narcotic laws of the state held sufficient). All these cases demonstrate a consistent holding on the issue dating back to *State v. Buchanan,* 5 H. & J. 317 (1821), where our predecessors first held that in a prosecution for conspiracy, it is sufficient to state in the indictment the conspiracy and the object of it; the means by which it was intended to be accomplished need not be set forth. We see no need to depart from this well settled law. *Id.*

In context and especially in view of the arguments made by Winters, "means" was used by both Winters and the Court to refer to the "acts", *i.e.,* crimes, proscribed by the applicable sections of Article 81. Specifying which of the acts the conspirators intended to commit certainly would have apprised Winters fully of the "crime" which was the object of the conspiracy and, thus, would have satisfied his concerns.

■ A defendant charged with a conspiracy involving controlled dangerous substances cannot be fully apprised of the "crime" that is the object of the conspiracy unless informed both of the substance involved and what was intended to be done with it, or how that substance was to be used, *i.e.,* possessed, sold, imported, etc. While it cannot be gainsaid that identification of the particular substance involved would *more* particularly describe the object of the conspiracy, and, indeed, may be sufficient, *see McMorris,* 277 Md. at 89, 355 A.2d at 453 (O'Donnell, J., dissenting), from the petitioner's perspective, even that would not suffice. The petitioner believes that, in addition to identifying the controlled dangerous substance, the indictment must also allege how the conspirators intended to use the substance or what they intended to do with it. The failure to allege either, he says, renders the indictment jurisdictionally defective; only if it contains both prongs would the indictment be sufficient, *i.e.,* give notice of the precise nature of the charge and permit the applicable penalty to be determined.

We are not persuaded. To hold as the petitioner would have us do would be to require that, in a conspiracy indictment, when the commission of a crime is the object of the indictment, that crime must be charged with the same specificity as if it were the substantive charge. That clearly is not the law. *See Buchanan,* 5 H. & J. at 346. Even *Garland v. State,* the case upon which the petitioner places reliance, is to the contrary. 112 Md. at 86–7, 75 A. at 633. Our opinion in *Winters* also belies that contention. When we decided *Winters,* we were, of course, aware of *Quaglione* and we easily could have corrected any misapprehensions apparent in that opinion. We did not. Instead, consistent with the settled principle that the object of a conspiracy need not be set out with the same particularity as if charging it as a substantive crime, we determined that the acts characterizing the manner in which the income tax laws were proposed to be violated were the "means by which" the conspiracy would be carried out, not its object.

■ The charge, conspiracy "to violate the controlled dangerous substances law of the State of Maryland," sufficiently characterizes the crime of conspiracy so as to invest the circuit court with jurisdiction. *Williams,* 302 Md. at 793, 490 A.2d at 1280. Sections 276–304 of Article 27 are codified under the subheading, "Health—Controlled Dangerous Substances," the purpose of which is "to establish a uniform law controlling the manufacture, distribution, possession, and administration of controlled dangerous substances and related paraphernalia in order to insure their availability for legitimate medical and scientific purposes, but to prevent their abuse which results in a serious health problem to the individual and represents a serious danger to the welfare of the people of the State of Maryland." That the subheading applies to numerous substances, having legitimate and illegitimate uses, and prohibits numerous acts when done in connection with those substances, cannot be doubted, but all those substances and prohibited acts (including the definitions critical to the proper understanding and interpretation of the subheading) are grouped together in one place for easy reference. Moreover, they

share, as we have seen, a common element: their abuse is inimical to the health and welfare of the citizenry. Thus, though numerous, the substances, and the proscribed acts pertaining to them, comprise, not an unlimited range of possibilities, but only a finite one. This was also true of the "lottery laws," *see Hurwitz*, 200 Md. at 589, 92 A.2d at 580 and the "Maryland income tax laws," applied in *Winters*, 301 Md. at 234, 482 A.2d at 896. Consequently, while it could have been more explicit, the charge put the accused on notice, *albeit* only in a general way, of what he was called upon to answer. And it was sufficient to provide a basis for the court to consider the legal sufficiency of the charging document. This is not a situation in which the indictment presented an unlimited number of possible objects of the conspiracy as, for example, would be the case if the charge was conspiracy to violate "the laws of the State of Maryland," *But see United States v. Cruikshank*, 92 U.S. 542, 559, 23 L.Ed. 588 (1875), in which the Court observed:

> "In Maine, it is an offense for two or more to conspire with intent unlawfully and wickedly to commit any crime punishable by imprisonment in the state prison (*State v. Roberts*) [34 Me. 320]; but we think it will hardly be claimed that an indictment would be good under this statute, which charges the object of the conspiracy to have been 'Unlawfully and wickedly to commit each, every, all and singular the crimes punishable by imprisonment in the state prison.' All crimes are not so punishable. Whether a particular crime be such a one or not, is a question of law. The accused has, therefore, the right to have a specification of the charge against him in this respect, in order that he may decide whether he should present his defense by motion to quash, demurrer or plea; and the court, that it may determine whether the facts will sustain the indictment."

Here, the indictment presents a finite number of objects, only those pertaining to the controlled dangerous substances law; "to violate the controlled dangerous substances law of the State of Maryland" apprises the court of

that universe of criminal acts in which the conspirators proposed to operate. A violation of one, or more, of those laws would be an "unlawful purpose," and, thus, a proper goal of a conspiracy.

To be sure, count 2 of the indictment [6] did not inform the petitioner of the substance involved, how the conspirators intended to use it, or what they planned to do with it. Without that information, he did not have sufficient information to determine, as he alleges, the precise nature of the crime which was the object of the conspiracy and, therefore, to determine the maximum penalty he faced. The indictment might well have been, on that account, defective, enabling the petitioner to challenge those omissions by motion filed pursuant to Maryland Rule 4–252(a). As we have seen, no timely motion was made in that regard and, accordingly, the defects were waived. Furthermore, Maryland Rule 4–241(a) permits a defendant to file a demand for a bill of particulars, to which the State would have had to respond within ten days. Rule 4–241(b). Again, the petitioner filed no such demand.

## II.

In addition to the conspiracy count, the petitioner was charged with maintaining a common nuisance (count 1), two

---

**6.** As we shall see infra, other counts charged included possession of cocaine, possession of cocaine with intent to distribute and possession of paraphernalia, of which the petitioner was convicted. It may be argued that the presence of those counts in the indictment is significant to the conspiracy's object. *See Hurwitz v. State,* 200 Md. 578, 588, 92 A.2d 575, 580 (1952). There, in addition to the conspiracy count, Hurwitz was charged, in other counts, with specific violations of the lottery laws. 200 Md. at 581, 92 A.2d at 576. We think it significant that, when distinguishing *United States v. Cruikshank,* 92 U.S. 542, 23 L.Ed. 588 (1875), in which the United States Supreme Court found insufficient a conspiracy indictment, the object of which was "unlawfully and wickedly to commit any crime punishable by imprisonment in the State prison," the Court commented that the indictment failed "to specify in any of the counts what right or privilege granted or secured by the Constitution or laws of the United States, the traversers had conspired to defeat." 200 Md. at 586, 92 A.2d at 579.

counts of possession of cocaine with intent to distribute (counts 3 and 8), two counts of possession of cocaine (counts 4 and 9), possession of phencyclidine (PCP) with intent to distribute (count 5), possession of phencyclidine (count 6), and two counts of possession of paraphernalia (counts 7 and 10).[7] Following a jury trial, he was convicted of conspiracy, along with one count of possession of cocaine with intent to distribute, one count of simple possession of cocaine and one count of possession of paraphernalia. The petitioner was sentenced to concurrent terms of imprisonment for conspiracy and possession of cocaine with intent to distribute, into which the simple possession of cocaine count was merged, the ten-year sentence for conspiracy being without parole. The court imposed a concurrent term of four years for possession of paraphernalia.

Pointing out that "one purpose of an indictment is 'to inform the court of the specific crime charged so that, if required, sentence may be pronounced in accordance with the right of the case,'" quoting *Ayre v. State*, 291 Md. 155, 163, 433 A.2d 1150, 1155 (1981), the petitioner argues that count 2 was not sufficiently specific to apprise him, and the court, of the sentence to be imposed after conviction. He challenges whether an after-the-fact interpretation of the verdict by the trial court is a sufficient substitute. The petitioner relies on *State v. Simpson*, 318 Md. 194, 567 A.2d 132 (1989).

■ In that case, based only on evidence that he made a purchase from an individual, from whom the police recovered a bag containing both heroin and cocaine, and even though what he purchased was never conclusively proven, Simpson was convicted of both possession of cocaine and possession of heroin. The Court of Special Appeals reversed the convictions, holding that the evidence was insufficient to prove either charge. 77 Md.App. 184, 549 A.2d 1145 (1988). We affirmed. 318 Md. at 196, 567 A.2d at 133.

---

7. The counts charging the same offense differ only in the date on which the occurrence was alleged to have occurred.

We rejected the State's argument that, because, by its express terms, the offense defined in Article 27, § 287(a) is "unlawful possession of a controlled dangerous substance," identification of the particular controlled dangerous substance is not an element of the offense which must be proven. We explained (318 Md. at 198–99, 567 A.2d at 134):

> As we pointed out in *Cunningham v. State*, [318 Md. 182, 188, 567 A.2d 126, 128–9 (1989) ], the penalty structure of the Maryland Controlled Dangerous Substances Act is tied to the particular substance involved. The penalty for possession with intent to distribute a narcotic drug listed in Schedules # 1 or # 2 differs from the penalty for possession with intent to distribute phencyclidine, and the penalty for possession with intent to distribute any other controlled dangerous substance differs from both of these. Article 27 § 286(b). Similarly, the penalty for possession of marijuana differs significantly from the penalty for the possession of any other controlled dangerous substance. Article 27 § 287(e). Enhanced penalties are available for possession with intent to distribute certain specified quantities of controlled dangerous substances, but only as to those particular substances.
>
> If, as the State seems to suggest, it would be sufficient to charge a defendant with possession with intent to distribute a controlled dangerous substance, without specifying the substance allegedly involved, neither the parties nor the court would know whether the defendant was facing a maximum sentence of twenty years or five years. No one could know whether the defendant was entitled to ten peremptory challenges, or four. Maryland Rule 4–313(a). In the absence of a special verdict, the court could not determine the permissible penalty.

*See also Spratt v. State*, 315 Md. 680, 685, 556 A.2d 667, 669 (1989) and *Hagans v. State*, 316 Md. 429, 450, 559 A.2d 792, 802 (1989), on which the *Simpson* court relied. Both of those cases stand for the proposition that a necessary element of an offense is one that is the *sine qua non* for the determination of the crime and/or its grade.

**506**

Although our analysis referred to the charging process, at issue in *Simpson*, was the sufficiency of the proof as to the charges actually brought, not, as here, the sufficiency of the indictment. Moreover, substantive offenses, rather than a conspiracy to commit them, were charged. As we have already seen, a count charging conspiracy need not describe the crime which is its object with the same particularity as would be required were that crime, as a substantive offense, being charged. To the extent that the Court of Special Appeals distinguished the case on these bases, it did not err.

■ The State argues that, "[i]n any event, Campbell was on notice of the maximum penalty he faced in the present case." In support of that assertion, it refers to the other counts in the indictment. Thus, it maintains, the jury, by finding the petitioner guilty of possession of cocaine with intent to distribute and possession of cocaine, did decide what the actual objects of the conspiracy were and, consequently, "the trial court properly interpreted the verdict as a finding of guilt of a conspiracy to unlawfully sell cocaine." [8] That being so, the State asserts, the petitioner was properly punished pursuant to Art. 27 § 38.[9] On the facts *sub judice*, we agree.[10]

---

8. In its instruction to the jury, *see infra,* to which the petitioner did not except, the court told the jury that the case was about cocaine; accordingly, we agree with the petitioner that the applicable offenses were the possession with intent to distribute and the simple possession counts, not the possession of paraphernalia count.

9. That section provides: "The punishment of every person convicted of the crime of conspiracy shall not exceed the maximum punishment provided for the offense he or she conspired to commit."

10. A different result may be required where the only charge before the court is conspiracy and the proof is of more than one object for that conspiracy. In that situation, because it is impossible to determine which object the jury found, the judge will not be in a position to make, and, therefore, should not make, that determination. Accordingly the applicable sentence may well be that for the object carrying the least penalty. *See* n. 12 *infra.*

We have already noted that the petitioner neither moved to dismiss the conspiracy count as defective, nor sought the particulars underlying it. From this, considering the other counts in the indictment, it may be inferred that the petitioner was fully informed of the objects of the conspiracy. Moreover, instructing the jury concerning conspiracy, the court said:

> The Defendant in this case is charged with conspiracy to violate the controlled dangerous substance laws of the State of Maryland. *Cocaine is indeed a controlled dangerous substance.*
>
> Now, conspiracy, conspiracy is an agreement between two or more persons to commit a crime. In order to convict the defendant of conspiracy the State must prove, number one, that the defendant entered into an agreement with at least one other person to commit the crime of violating the CDS Act of the State of Maryland, and that he entered into that agreement with the intent to commit that crime. (emphasis supplied)

With respect to the intent element, the court had previously told the jury:

> Intent is a state of mind and ordinarily cannot be proven directly because there is no way of looking into a person's mind. Therefore, a defendant's intent may be shown by surrounding circumstances. In determining the defendant's intent you may consider the defendant's acts and statements as well as the surrounding circumstances. Further, you may but are not required to infer that a person ordinarily intends the natural and probable consequences of his acts.

From the foregoing, it may be inferred that the jury was adequately instructed.[11] Furthermore, by its ver-

---

11. A conspiracy may have more than one object. *See Tracy v. State,* 319 Md. 452, 459, 573 A.2d 38, 41 (1990) (citing to *Mason v. State,* 302 Md. 434, 445, 488 A.2d 955, 960 (1985)); *Jordan v. State,* 323 Md. 151, 161, 591 A.2d 875, 879–80 (1991) (quoting *Tracy, supra* ). However many objects a conspiracy may have, only one sentence may be

dict, it likewise may be inferred that it found that the objects of the conspiracy were to possess cocaine and to possess it with intent to distribute. The petitioner does not contend that the evidence was insufficient to sustain either of the substantive charges. Nor does he contend that the way those charges were presented to the jury precluded the jury from considering them as the objects of the conspiracy. His argument is premised completely upon the failure of that count of the indictment charging conspiracy to specify the object of the conspiracy. We have already rejected that argument. We now reject the inference the petitioner draws from it, that the sentence imposed was thereby illegal.[12]

## III.

The paraphernalia counts, charging possession of "numerous smoking pipes, adapted for administration of controlled dangerous substance under circumstances which reasonably indicate an intention to use for purpose of illegally administering controlled dangerous substance ...,"

---

imposed. Where a defendant is found guilty of conspiracy to commit two crimes, the crime that carries the more severe penalty is the guideline offense for purposes of sentencing. *Jordan*, 323 Md. at 162, 591 A.2d at 880. In this case, the jury's verdict established that the conspiracy had two objects, to possess with the intent to distribute, and to possess, cocaine. Of the two, possession with intent to distribute carries the more severe penalty and, thus, is the guideline offense.

**12.** Where multiple sentences are possible in respect of multiple acts, all of which could, though not necessarily, be objects of the conspiracy, but the jury does not identify which of them are involved, it may be argued that the applicable sentence is that for the crime carrying the least severe penalty. *See Spratt*, 315 Md. 680, 690, 556 A.2d 667, 672 (1989) and *Hagans*, 316 Md. 429, 445, 559 A.2d 792, 800 (1989). In this case, that would mean that the petitioner could only be sentenced for possession of paraphernalia. See note 10, *supra*.

The petitioner does not argue his entitlement to the lesser penalty, seeking, instead, outright reversal because of the failure of the charging document adequately to characterize, *for jurisdictional* purposes, the conspiracy charge. Since we have determined that it passes muster from a jurisdictional perspective, the issue need not be further addressed.

were brought pursuant to Article 27, § 287(d). Although the petitioner does not raise the issue, it is quite obvious that § 287(d) does not apply and, so, as to the count of which he was convicted, the petitioner received an illegal sentence. Illegal sentences may be challenged at any time, even on appeal. Rule 4–345(a); *Matthews v. State,* 304 Md. 281, 288, 498 A.2d 655, 658 (1985), citing to *Walczak v. State,* 302 Md. 422, 427, 488 A.2d 949, 951 (1985).

Section 287(d)(1) defines "controlled paraphernalia" as it pertains to its use, rather than its packaging (*see* subsection (d)(2)) or its preparation (*see* subsection (d)(3)), as "[a] hypodermic syringe, needle or other instrument or implement or combination thereof adapted for the administration of controlled dangerous substances by hypodermic injections. . . ." The "numerous smoking pipes" referred to in the paraphernalia counts simply do not come within that definition. The petitioner should have been charged under Article 27, § 287A(a), which defines "drug paraphernalia" as: "all equipment, products, and materials of any kind which are used, intended for use, or designed for use, in . . . ingesting, inhaling or otherwise introducing into the human body a controlled dangerous substance. . . ." The maximum penalty for a violation of § 287A(c), "Use or possession with intent to use drug paraphernalia," is: for the first violation, a $500.00 fine, and for a subsequent violation, two years imprisonment, $2000 fine or both. The petitioner was sentenced to 4 years imprisonment.

JUDGMENTS AFFIRMED AS TO ALL COUNTS EXCEPT AS TO THE SENTENCE FOR POSSESSION OF PARAPHERNALIA, AS TO WHICH THE SENTENCE IS VACATED. THE CASE IS REMANDED TO THE COURT OF SPECIAL APPEALS WITH INSTRUCTIONS TO FURTHER REMAND TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR RESENTENCING ON THAT COUNT.

COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE PETITIONER.

MURPHY, C.J., concurs in the result only.

**510**

ELDRIDGE and McAULIFFE, Judges, dissenting:

We dissent from the Court's affirmance of the conspiracy conviction for essentially the reasons set forth by Judge O'Donnell in *McMorris v. State*, 277 Md. 62, 77–90, 355 A.2d 438, 447–454 (1976).